73 N.J. Super. 486 (1962)
180 A.2d 210
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
CHARLES SCHARFSTEIN, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Argued and Decided February 7, 1962.
*487 Mr. Charles C. Carella, Assistant Prosecutor, argued the cause for plaintiff (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney).
Mr. Thomas E. Durkin, Jr., argued the cause for defendant.
CRANE, J.C.C.
The testimony in this case shows that Peter J. Farley, a Newark detective assigned to the Fifth Precinct at Hunterdon and West Bigelow Streets, received a telephone call at approximately 2:45 P.M. on a Friday, the day in question. The caller was unknown to Detective *488 Farley and would not give his name, although asked several times to do so. He said that a white man would be at the corner of Nye Avenue and Dewey Street, Newark, in a white Buick sedan in approximately fifteen minutes and he would have lottery slips on him.
The detective testified that it would have taken about fifteen minutes to drive from the Fifth Precinct to the Municipal Court, and about the same time to drive from the Municipal Court back to Nye Avenue. It would have taken approximately the same time, that is, fifteen minutes, to drive from the Fifth Precinct where he and the other officers were located, to the Court House, and another fifteen minutes approximately to drive from the Court House back to the corner of Nye Avenue and Dewey Street. The only place where a magistrate or a judge was available at that time of the day was at the Municipal Building or at the Essex County Court House at High and West Market Streets in Newark. The corner of Nye Avenue and Dewey Street was at least three-quarters of a mile from the Fifth Precinct at Hunterdon and West Bigelow Streets.
Detective Farley, accompanied by another officer, drove to the corner of Nye Avenue and Dewey Street. They were just getting into position when a car arrived. It was a white Buick sedan and in the car was a white man. To that extent the information given by the anonymous telephone caller was corroborated. Detective Farley then asked the defendant to get out of the car, placed him under arrest and searched him. The defendant said nothing. Detective Farley found a white envelope which was sealed. He opened it, discovering adding machine tapes which in his opinion were paraphernalia used in connection with the operation of a lottery.
There are several questions presented. The defendant contends that the officer did not have the power to make an arrest. The possibilities for arrest for this kind of offense would have been: (1) under the gambling statutes of New Jersey, which make such an offense a *489 misdemeanor N.J.S. 2A:121-3; (2) under the disorderly person's statute N.J.S. 2A:170-18, which is an offense of lesser status than a crime; or (3) under the municipal ordinance. In order to justify an arrest for a misdemeanor or a disorderly persons offense it is required that the police officer have viewed or observed with his own senses the commission of the offense. Webb v. State, 51 N.J.L. 189 (Sup. Ct. 1889); N.J.S. 2A:169-3. And, in the absence of specific statutory authority, an officer can arrest for violation of a municipal ordinance only after first obtaining a warrant. Mayor, etc., of Newark v. Murphy, 40 N.J.L. 145 (Sup. Ct. 1878). Since the police officer did not view the slips prior to the time he made the arrest and did not possess a warrant, he of course had no power to make the arrest.
The defendant argues that since the arrest was invalid, the search that was made at the same time or approximately contemporaneously with the arrest must therefore necessarily be held to be invalid. This is not necessarily so.
While the arrest may have been invalid, there may nevertheless have been a reasonable basis for the search. The Fourth Amendment of the Constitution of the United States and the Constitution of New Jersey provide in substance that people shall be secure in their homes, persons, personal papers and effects, from unreasonable searches and seizures and that search warrants shall only be issued on probable cause.
Both Constitutions prohibit only searches that are unreasonable. It has been recognized by numerous United States Supreme Court cases that there is a variety of circumstances in which searches without a warrant may nevertheless be reasonable. One of these circumstances is that occurring when a search is made pursuant to a valid arrest. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). It does not follow however that a search made after an invalid arrest must necessarily *490 be held unreasonable. The search may well have been justified by the existence of probable cause combined with the existence of circumstances making it impracticable to obtain a warrant.
The difficulty stems from the fact that different standards apply to the power to make an arrest as compared with the power to make a search. In New Jersey, as has been pointed out above, an officer cannot arrest without a warrant for a misdemeanor or a lesser offense unless he observes the commission of the offense. It may seem paradoxical that he may conduct a search under circumstances where he could not make an arrest. Nevertheless this appears to be the state of our law in New Jersey. This problem has been met in the narcotics field under Federal Law by making the standards coincide. Agents of the Federal Bureau of Narcotics have been empowered by statute to make an arrest when they have reasonable grounds to believe that a violation of the Federal narcotics laws has taken place. 26 U.S.C. § 7607. Once having made such an arrest, a search conducted subsequently is validated under the authority of United States v. Rabinowitz, supra.
In Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), it was held that the term "probable cause" as used in the Fourth Amendment and "reasonable grounds" as used in the Narcotics Control Act are substantial equivalents. The case further held that a search without a warrant conducted subsequent to and incidental to an arrest under 26 U.S.C. § 7607 was not violative of the Fourth Amendment.
Defendant's argument on this point was considered and rejected by the United States Supreme Court in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Chief Justice Taft said, at 267 U.S. 158, 45 S.Ct., at 287,
"* * * The argument of defendants is based on the theory that the seizure in this case can only be thus justified. If their theory were sound, their conclusion would be. The validity of the seizure *491 then would turn wholly on the validity of the arrest without a seizure. But the theory is unsound. The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law."
The Draper case, supra, is very close to this one in point of fact. One difference is that there was ample time to procure a warrant in the Draper case; here speed was essential. In the Draper case the informant was known and had proved to be reliable on previous occasions. That element is lacking here. However, the information given by the informant was corroborated in some very significant details by observation of the police officers. As in the Draper case, the defendant, fitting the description given by the informant, arrived at the precise time and place stated by the informant. This fact formed a reasonable ground for belief in the veracity of the informant. Previous experience is not the only basis for judging an informant's reliability.
The fact that the defendant was driving a moving motor vehicle is also significant. This factor contributes to the emergent nature of the situation. See Carroll v. United States, supra; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). It is well known that persons engaged in transporting lottery paraphernalia do so quickly and furtively.
The defendant urges that this situation is controlled by United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). That case held that even if there were reasonable grounds for searching the car in question the search of a passenger was not justified. The case is distinguishable since the defendant here was the driver. But even beyond that it cannot rationally be said that the state courts of all the states in the nation must necessarily follow every twist and turn of Federal decisional law as it has developed in the many cases setting forth divergent views. The courts of the states might very well differ in *492 the application of the general principles to the specific factual situations.
It does not necessarily follow that because a different result is reached in a similar factual situation that a state court is violating or refusing to give recognition to the Fourth Amendment. The case of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), requires only that the state courts apply the sanction of suppression to property which has been found to have been unreasonably seized. There may conceivably be many factual situations in which the minds of reasonable judges may conscientiously differ. There may be many differences in applications of the law of evidence, standards of proof and other similar principles. Opinions of the Federal courts, including the United States Supreme Court, decided before Mapp v. Ohio, supra, are properly viewed as guides rather than controlling precedent.
In view of the foregoing, it is concluded that the search was reasonable under all of the circumstances, that the officers had probable cause to make the search, that it was not practicable for the officers to obtain a warrant, and that notwithstanding the lack of power to make the arrest nevertheless the police officers did have power to make the search.
The motion to suppress the evidence is denied.