78 N.J. Super. 247 (1963)
188 A.2d 305
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES DOLCE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 14, 1963.
Decided February 14, 1963.
*248 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Michael A. Querques argued the cause for appellant.
Mr. Anthony D. Andora, Assistant Prosecutor, argued the cause for plaintiff (Mr. Guy W. Calissi, Bergen County Prosecutor, attorney).
The opinion of the court was delivered by GAULKIN, J.A.D.
Defendant Charles Dolce was convicted upon an indictment which charged that on June 30, 1960, in Garfield, Bergen County, he "unlawfully and feloniously did receive, buy and have: fifty-one State of New Jersey Certificates of ownership of a Motor Vehicle * * * the property * * * of New Jersey Motor Vehicle Agency before then feloniously stolen, taken and carried away, he the said Charles Dolce well knowing the same to have been feloniously stolen, taken and carried away, contrary to the provisions of N.J.S. 2A:139-1 * * *." He appeals.
On June 4, 1958, 2,100 such certificates (including the 51 here in question) were stolen from a motor vehicle agency in Union City, New Jersey. The thieves have never been caught. The motor vehicle inspectors investigating the theft were led to suspect defendant. The reasons for the suspicion, and *249 whether defendant was suspected of the theft or only of receiving, do not appear.
In any event, the inspectors obtained the services of a man whom we know only as "Stu." They arranged for one Rosenberg to introduce "Stu" to defendant. The certificates could not be passed until they were stamped with a motor vehicle agency validating machine. Pursuant to the instructions of the police, "Stu" apparently told defendant that he knew someone named "Joe" who had such a machine, stolen from a motor vehicle agency, who would validate stolen certificates in exchange for half of them. Dolce apparently agreed with "Stu" to deliver 1,200 of the certificates to "Joe" for such validation, and to divide them with him.
Pursuant to this plan, "Stu" brought Dolce to a garage in Garfield on June 30, 1960, the date mentioned in the indictment, where he introduced Dolce to "Joe." "Joe" was in fact Inspector Guarino, posing as an employee of the garage. By prearrangement other police officers were stationed outside the garage. "Stu" told "Joe" there had been "a little mix-up" and that Dolce had brought only 50 certificates. Guarino testified that when he asked Dolce why he had not brought the 1,200 promised, "he said that he [Dolce] could not be trusted with all of them at the first trip."
"Joe" and defendant haggled over the 51 certificates, and finally agreed that "Joe" was to get 28 and Dolce 23 of them, plus $50 to be paid to defendant by "Joe." While the bargaining was going on "Stu" left. After the terms were agreed upon, defendant produced the certificates from under his shirt and "Joe" began stamping them, whereupon the police came into the garage and arrested defendant.
After defendant was indicted, he served a demand for particulars upon the prosecutor in which he asked, among other things, for "the name and address of the person who took the defendant to the garage where he was apprehended." When the demand was refused, defendant moved to compel an answer. Defense counsel told the court:
*250 "The situation is this. The defendant Dolce advises his counsel that some several days or a week prior to the arrest he met one whom he was introduced to as Stu. He tells me that * * * over this period of five or six days or a week Stu continually had conversations with him with respect to engaging in illicit activity, mainly concerned with getting these forms * * * and he gave him some money, loaned, or what have you, and ingratiated himself with the defendant Dolce and thereby lured him and enticed him into one day procuring or securing these forms and then meeting with this so-called Joe. They met in a certain place and Stu then drove Dolce into Garfield, went into this garage, which the defendant cannot remember, and then Stu introduced the defendant to a man who turned out later to be an undercover agent and a motor vehicle inspector for the State of New Jersey. Then, seconds later, in walks four, five, six or seven men with drawn guns, and he was arrested.
* * * We have been looking for [Stu] in whatever manner we could look for him. The defendant says he is not able to find him. I have personally inquired myself as a result of the preliminary hearing that we had, as a result of the conversations with the arresting officers in the case, and no one is willing to say who Stu is, so that I may interview him for the purpose of setting up as a defense the question of entrapment.
These being the facts, it is my sincere opinion genuinely that the defendant is being prejudiced by the withholding of the name of this person and being deprived of his basic rights, in that he is being prevented from pursuing and adequately showing his defense because the one man who knows in this world that this is the substance to this offense and can corroborate the testimony of the defendant and give the weight to it so that it can be accepted by a jury  he is missing * * *."
The motion was denied.
Although defendant did not take the stand or call any witnesses at the trial he did raise the defense of entrapment, and he tried to prove it through the cross-examination of the State's witnesses. His counsel repeatedly demanded the production of "Stu" or his name and address, but his demands were rejected.
The trial court relied on N.J.S. 2A:84A-28, which provides:
"A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a *251 governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues."
But "Stu" was more than a mere informer, for he did far more than merely furnish information purporting to disclose a violation of the law. If what counsel said was proved, it would be evidence tending to show entrapment. Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1943); Morei v. United States, 127 F.2d 827 (6 Cir. 1942); cf. State v. Rosenberg, 37 N.J. Super. 197, 204 (App. Div. 1955); Rosso v. United States, 1 F.2d 717 (3 Cir. 1924). See also State v. Dougherty, 88 N.J.L. 209 (E. & A. 1915). Therefore, disclosure of "Stu's" identity was essential to assure a fair determination of the issue. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); Portomene v. United States, 221 F.2d 582 (5 Cir. 1955); Sorrentino v. United States, 163 F.2d 627 (9 Cir. 1947). Cf. Harrington v. State, 110 So.2d 495, 497 (Fla. D. Ct. App. 1959); Nichols v. United States, 176 F.2d 431 (8 Cir. 1949); McInes v. United States, 62 F.2d 180 (9 Cir. 1932), cert. denied 288 U.S. 616, 53 S.Ct. 507, 77 L.Ed. 989 (1932).
What is essential to assure a fair determination of the issues at a trial depends upon the charge made against defendant and the defense which he asserts. Roviaro v. United States, supra; State v. Murphy, 36 N.J. 172, 182 (1961); State v. Moffa, 36 N.J. 219, 222 (1961). Here the charge was not that defendant had stolen the certificates, but that he "did receive * * * and have" them, and the defense was that he was entrapped into obtaining them. Defendant may have had no alliance with the thieves, but may have known who had the stolen certificates. If he was not a dealer in stolen certificates (see Annotation, 33 A.L.R.2d 883, 886, 908 (1904); United States v. Roett, 172 F.2d 379, 380 (3 *252 Cir. 1949)), and had no interest in, control over, or connection with them or their possessors, and procured them only because of "Stu's" enticement, he was entrapped.
"Stu" and defendant were the only ones who could testify as to what transpired between them from the time Rosenberg introduced "Stu" to defendant to the time "Stu" introduced defendant to "Joe." "Stu" was therefore defendant's only witness to prove entrapment if defendant chose not to take the stand, which he had the right to do. Cf. State v. Corby, 28 N.J. 106 (1958). And even if defendant had elected to take the stand, he would still have had the right to call "Stu" as a witness to corroborate him. The State therefore should have produced "Stu" at the trial or given defendant his name and whatever information it had as to his whereabouts. The failure to do so was prejudicial error.
Defendant argues also that the venue was improperly laid in Bergen County because the State knew he had acquired the certificates outside of Bergen County and enticed him into Bergen County to enter the trap in which he was arrested. These are part of the facts involved in the issue of entrapment. If the defendant's proof of entrapment leads the jury to acquit, the issue of venue will be of no moment. If he was not entrapped, the venue may have been properly laid in Bergen County. Cf. State v. DiPaolo, 34 N.J. 279 (1961). In any event, the issue of venue can not be resolved on the present record.
The judgment is reversed.