79 N.J. Super. 236 (1963)
191 A.2d 205
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES SCHARFSTEIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 1963.
Decided May 17, 1963.
*237 Before Judges GOLDMANN, FREUND and FOLEY.
*238 Mr. Thomas E. Durkin, Jr. argued the cause for appellant (Mr. Gregory J. Castano, on the brief).
Mr. Brendan T. Byrne, Essex County Prosecutor, argued the cause for respondent (Mr. C. William Caruso, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by FOLEY, J.A.D.
Defendant was found guilty in the Municipal Court of the City of Newark of possession of lottery slips. N.J.S. 2A:170-18 (Disorderly Persons Act). No stenographic record was taken of those proceedings. He appealed the conviction to the Essex County Court. There, a trial de novo was conducted, at the conclusion of which he was again convicted of the offense specified. Hence this appeal.
In advance of the County Court trial defendant moved to suppress evidence obtained by members of the Newark police department as a result of a search of his person without a warrant, and the consequent seizure of lottery paraphernalia. The motion was denied for reasons set forth in a written opinion of Judge Crane which appears at 73 N.J. Super. 486 (Cty. Ct. 1962).
At the trial the motion was renewed. It was again denied. The sole ground of appeal is that the evidence in question was the product of an unreasonable search and seizure, condemned in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), as a violation of the Fourth Amendment of the U.S. Constitution.
The facts are not in dispute. On November 24, 1961 at about 2:40 P.M. Peter J. Farley, a detective on duty at the Fifth Precinct Police Station in Newark, answered a telephone call. The caller declined to identify himself, or to come to the police station. The detective did not and could not identify him beyond saying that the voice was that of a male, and sounded to him "like he was a white person." The message was that "a white man would be in a white Buick sedan at the corner of Nye Avenue and Dewey Street in 15 *239 minutes and that he would have lottery numbers on him." The testimony was that this corner was "at least" three-quarters of a mile from the Fifth Precinct Station at Hunterdon and West Bigelow Streets. According to the detective, the only available places to obtain a warrant were either the municipal court or the Essex County Court, located between one and two miles away.
Upon receiving the call Detective Farley, accompanied by another officer, drove to the corner of Nye Avenue and Dewey Street and were "just planting" themselves in position when a white Buick sedan driven by a white man came upon the scene, and stopped. The police identified themselves, asked the operator to step from the car, placed him under arrest, and searched his person. They found a sealed white envelope containing adding machine tapes which, in the opinion of Detective Farley, were paraphernalia used in connection with the operation of a lottery.
In denying defendant's motion that the evidence be suppressed Judge Crane concluded that the arrest of Scharfstein was invalid, hence that the search and seizure was not an incident of a lawful arrest. The judge noted that the offense of possession of lottery slips is at most a misdemeanor under N.J.S. 2A:121-3, and went on to say that to justify an arrest for a misdemeanor or a disorderly persons offense (the charge here made) it is required that the police officer should "have viewed or observed with his own senses" the commission of the offense. See Webb v. State, 51 N.J.L. 189 (Sup. Ct. 1889). In so holding, the judge evidently was influenced by the distinction frequently made between the authority to arrest on "probable cause," where the arresting officer has reason to believe that a "felony" within the common law of arrest has been committed and, in the case of a misdemeanor, the restriction of authority to arrest, to an offense committed in his presence.
We agree with Judge Crane that the arrest was not a valid one. Indeed, the State does not argue affirmatively to the contrary. However, in light of the present state of our law, *240 we deem it unwise to rest our determination of this aspect of the case on the common law distinction drawn by the judge. In State v. Smith, 37 N.J. 481, 493-494 (1962), Chief Justice Weintraub discussed at some length the common law felony-misdemeanor dichotomy, and the relationship between it and the high misdemeanor-misdemeanor framework of our statutory criminal law. He pointed out, inter alia, that "the denomination of a crime as a misdemeanor or high misdemeanor is not the solvent" of whether the offense is a felony "within the common law of arrest," and also observed that in other jurisdictions, for sundry purposes, "a felony is deemed to be an offense for which a sentence to the state penitentiary could be imposed." Such a sentence, of course, could be lawfully ordered in this State for the commission of the statutory misdemeanor of possession of lottery paraphernalia.
While finding that the arrest of Scharfstein was invalid for want of probable cause, Judge Crane nevertheless held that there was "probable cause" for making the search independent of the arrest, and thus that the search was not unreasonable within the meaning of the Fourth Amendment of the Constitution of the United States and Art. I, par. 7 of the Constitution of New Jersey.
Defendant challenges the holding as an unwarranted extension of the law. He argues that, in the circumstances of this case, the search and seizure could only be justified if it was incidental to a lawful arrest. He contends that probable cause relates to the lawfulness of the arrest, and if the arrest is found to be unlawful either for want of probable cause, or because of the absence of proof that the offense was committed in the presence of the arresting officer, "probable cause" for search and seizure may not be independently assessed. The question is an interesting one, but we refrain from venturing an answer to it since, in light of our disposition of the matter, whatever we might say would be a dictum.
Assuming, but not deciding, that probable cause will sustain a search and seizure even though an arrest cannot *241 lawfully be made, the facts of each individual case must be examined and a determination made of whether the circumstances justified a reasonable belief by the searching officer that a crime had been or was being committed. Such determination should embrace a consideration of many factors  for example, the nature of the offense involved, the time, place and circumstances in which the police are called upon to act, and, when the arrest or search is based upon information gained by the police through hearsay sources, the reliability of the latter.
The bare bones of the circumstances which prompted the search of defendant's person were (1) an anonymous telephone message that at a stated time and place, a white man in a white Buick car would appear, and (2) the subsequent appearance of such a person as predicted. In these circumstances, a determination of the reasonableness of the police action without formal warrant, involving, as it did, defendant's constitutional rights, requires primarily, although not exclusively, consideration of the reliability of the information given to the police. This, in turn, necessarily involves an assessment of the reliability of the informant.
We do not have before us a case in which the police had reason to rely upon detailed information, necessarily based on extensive surveillance by an informant known to the police, and who on prior occasions had demonstrated the reliability of his information. All that brought the police to the scene of this search was a telephone call "out of the blue" by one who refused to identify himself. But, argues the State, the reliability of the information was substantiated by the appearance of the defendant as predicted.
There is no doubt that in some circumstances the coalescence of predicted information and actuality may be regarded as furnishing support for reliance by the police on information received. See, e.g., Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). But, note in Draper the minute details furnished by the informant and the precise conformance with them of the predicted *242 events. Note also that the informant was a "special employee" of the government.
A careful analysis of the Draper case and a comparison of it with the case sub judice serves to confirm our belief that the adjudication of the reasonableness of a search, in constitutional purview, "turns on the circumstances presented by a particular situation as a matter of substantive determination," as stated by Justice Frankfurter in Chapman v. United States, 365 U.S. 610, 618, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961).
Judged by this standard, we conclude that in the circumstances of this case the information upon which the police arrested Scharfstein and searched him was not cloaked with sufficient reliability to make the search and seizure reasonable and, accordingly, the seized evidence will be suppressed.
Reversed, and remanded for proceedings not inconsistent with this opinion.