79 N.J. Super. 242 (1963)
191 A.2d 208
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FLETCHER BURNETT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 18, 1963.
Decided May 17, 1963.
*244 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Clive S. Cummis argued the cause for appellant (Messrs. Maurer & Maurer, attorneys).
Mr. Peter Murray, Assistant Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
Defendant appeals from a conviction upon an indictment charging him with the knowing and unlawful possession of lottery slips, contrary to the provisions of N.J.S. 2A:121-3. The case was tried in the Essex County Court without a jury.
The only witness called by the State was Robert J. Murphy, a detective of the police department of the City of Newark. Detective Murphy testified that on February 15, 1961, at *245 approximately 3:40 P.M., he and Detective Rothland were on patrol duty in the vicinity of Montgomery and High Streets, Newark, when they "ran into an informant" who on nine or ten previous occasions had given them information which resulted in five or six arrests. The informant told them that "in approximately the next ten or fifteen minutes a blue Mercury * * * around a '54 or '55  driven by a colored male would pull into a housing development parking lot across from or near Broome and Montgomery Street. When this colored male driving this Mercury left that parking lot he would have lottery slips on him." They took up surveillance at Montgomery and Somerset Street, and approximately ten minutes later a car which met the description entered the parking lot. About four or five minutes thereafter they observed the car "starting to come back out again." They then "went and blocked it in the parking lot, blocked it from coming out of the driveway, and informed the gentleman driving the car that [they] had a complaint of lottery against him," and proceeded to search the vehicle and the defendant. Detective Rothland searched him "in the obvious places, like pockets, and things like that, where we normally would find lottery slips." Detective Murphy searched him again, "proceeding to go through the entire length of his body, and in his waist band, in his belt by his spine were found five white lottery envelopes, or five white envelopes containing lottery slips." The detectives also found cash in the amount of $135. At the police station defendant admitted that he had been a "pickup" man for a period of three weeks. A pickup man collects lottery slips from various writers. The lottery slips were introduced into evidence as exhibit S-1-A, B, C, D and E  over defendant's objection that the State had failed to show that the evidence was obtained by a reasonable search and seizure.
The defendant did not take the stand or otherwise contest the evidence given by Detective Murphy.
Defendant asserts in his brief that on the day prior to the trial, after a day-long argument on the question of the reasonableness *246 of the search and seizure, the court denied his motion to suppress exhibit S-1. The argument on that motion is not reproduced in defendant's appendix, and we have no knowledge of the scope of it, or of the points therein advanced.
The issue raised upon this appeal is sharply defined. To quote from defendant's brief:
"This appeal poses a narrow question. Simply stated, it is whether a defendant has the right to learn the identity of a police informer upon whose information the police made a search and seizure on his person and automobile without obtaining a search warrant. The question is res nova in New Jersey."
Since defendant has chosen thus to limit his attack upon the seized evidence we need not concern ourselves with the question of whether or not there was probable cause for the search, or the ramifications of that problem. Cf. State v. Scharfstein, 79 N.J. Super. 236 (App. Div. 1963).
Generally speaking, what is usually referred to as the informer's privilege is in reality the government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law; the purpose of the privilege is the protection of the public interest in effective law enforcement by recognizing the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encouraging them to perform that obligation. Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1956). See also Morss v. Forbes, 24 N.J. 341, 360-361 (1957). The government's privilege to withhold disclosure of an informer's identity must give way, where the disclosure of his identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause; in these situations the trial court may require disclosure and, if the government withholds the information, dismiss the action. Roviaro, supra, 353 U.S., at pp. 60-61, 77 S.Ct., at pp. 627-628, 1 L.Ed.2d 639.
*247 The Legislature of this State has undertaken to balance the interests of the public and the individual and to accomplish the purposes above noted. N.J.S. 2A:84A-28 provides:
"A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of [the] identity is essential to assure a fair determination of the issues." (Emphasis added)
The testimony taken at the trial directly relating to the question at issue was brief. In view of our disposition of the case, we deem it advisable to set it out verbatim:
"Q. You have no intention of disclosing the identity of this informer?
MR. FORD [assistant prosecutor]: I object to that, your Honor.
THE COURT: I will let him answer.
MR. MAURER [defense counsel]: I will rephrase it, if you want me to.
THE COURT: All right. Do you have any intention of disclosing the identity of this informer? I will ask the question for you.
THE WITNESS [Detective Murphy]: With the Court's permission, no, I do not, sir.
Q. You know who he is? A. Yes, sir.
Q. And you haven't called him to testify here this morning?
A. No, I have not.
MR. FORD: I object, your Honor.
THE COURT: Sustain the objection. But he has answered, and I will let the answer stand.
MR. MAURER: No further questions.
THE COURT: All right. Anything further?
MR. FORD: No, sir.
THE COURT: I assume, Mr. Maurer, you renew your objection in view of the cross examination. I am just asking you this so that the record will note that you made another objection at this time.
MR. MAURER: Yes, sir, I do.
THE COURT: All right. There will be the same ruling. The objection will be overruled." (Emphasis added)
*248 We do not reach the question of whether the trial court would have been required to direct the State to disclose the identity of the informer had defendant timely demanded this information. A defendant cannot raise the problem of nondisclosure in the appellate courts when he did not seek disclosure at the trial or preliminary hearing, or did not move to strike the testimony on a refusal to disclose. Priestly v. Superior Court, 50 Cal.2d 812, 330 P.2d 39, 43 (Sup. Ct. 1958). See also Annotation, 76 A.L.R.2d 262, 299-305 (1961). The logic of this rule, supported by the great weight of authority, is patent. As noted above, the general rule, and the principle upon which N.J.S. 2A:84A-28 is founded, is that a privilege to refuse to disclose the identity of an informant is deemed to exist. Hence, one seeking to invade the privilege is bound to make a proof showing which brings him within a recognized exception to the exercise of the privilege. Cf. State v. Dolce, 78 N.J. Super. 247 (App. Div. 1963). A defendant carries a minimum burden of demanding the disclosure with such specificity as to call upon the trial judge to determine from an examination of the proofs whether the disclosure demanded is essential to a fair determination of the issues of the case.
Nothing approaching such a demand is reflected by the stenographic transcript of the proceedings herein. Defendant's attorney merely stated in his questioning of Detective Murphy, "You have no intention of disclosing the identity of this informer?" The court itself then asked Murphy whether he intended to disclose. Murphy replied that with the court's permission he did not. Nothing further was said by the attorney. No motion was made by him that the court direct Murphy to make the disclosure, and when the exhibit was offered in evidence no motion was made to suppress it upon the specific ground that for this reason the defendant had been denied his constitutional rights.
The absence of affirmative action on the part of the defendant compelling a judicial ruling voids the record of reviewable judicial action unless it be said that the court, on *249 its own motion, must order disclosure. As was aptly said in Coy v. Superior Court, 51 Cal.2d 471, 334 P.2d 569, 570-571 (Sup. Ct. 1959):
"To hold that the magistrate or trial court must strike the evidence on its own motion when the objection to it has not been called to its attention would open the door to needless repetitions of preliminary hearings. It would also permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal and a new trial ordered."
Moreover, burdening the court with taking the initiative would plainly contravene the spirit of N.J.S. 2A:84A-28, supra, which, as we have already indicated, plainly imports the grant of a privilege defeasible in limited circumstances. Although we are inclined to the view that in the circumstances presented to the trial court a demand for disclosure, if made, should have been denied, we prefer to rest our determination upon the holding that at the trial the question before us was not preserved for appeal.
Affirmed.