79 N.J. Super. 559 (1963)
192 A.2d 312
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
HARRY H. KLEIN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 17, 1963.
Decided June 27, 1963.
*561 Before Judges GOLDMANN, FREUND and FOLEY.
*562 Mr. Peter Murray, Assistant Prosecutor, argued the cause for appellant (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney).
Mr. Norman Fishbein argued the cause for respondent.
The opinion of the court was delivered by FOLEY, J.A.D.
The State appeals from an order of the Essex County Court suppressing certain evidence, seized as the result of a search of defendant's motor vehicle without a search warrant. We granted leave to appeal. Thereafter on application of the State and with the consent of defendant, we remanded the matter to permit the taking of further testimony, meanwhile retaining the appeal.
The single question presented is whether the search was "unreasonable," and thus the fruits of it are barred as admissible evidence on the trial of the indictment, by the guarantees of freedom from unreasonable searches and seizures contained in the Constitutions of the United States and of this State.
As we recently noted in State v. Scharfstein, 79 N.J. Super. 236, 241 (App. Div. 1963), the facts of each individual case must be examined and a judicial determination made of whether the circumstances justified a reasonable belief by the searching officer that a crime had been or was being committed.
We are in accord with the findings of fact and conclusions of law filed by Judge Matthews, which follow:
"This Court granted an order suppressing evidence in the matter of the State of New Jersey v. Harry M. Klein, Indictment No. 172-61, and an appeal was taken by the State to the Appellate Division of the Superior Court, Docket No. A 1086-61. Upon motion of the plaintiff-appellant State of New Jersey, and with the consent of the defendant-respondent Harry M. Klein, the matter was remanded to the Essex County Court for the purpose of taking whatever additional relevant testimony might be offered by the State or the defendant, with the opportunity of the Trial Judge to file supplemental memoranda. A hearing was subsequently held and testimony was presented by Detective John P. Reilly.
*563 Detectives Reilly and Cahill of the Newark City Police Department were assigned to the Gambling Investigation Division. On February 24, 1961, at approximately 11:30 A.M., they left Police Headquarters on Franklin Street to investigate a complaint that bookmaking was being carried on at a place called the Hawthorne Pleasure Club on Hawthorne Avenue. About one block from Police Headquarters, Detective Reilly went to a public phone booth and there received a call from an informer who told him that a man operating a red panel truck with the name `E. Klein' or `H. Klein' on its side was going from house to house accepting lottery bets while fronting as a bakery delivery service. This information had no connection with the bookmaking complaint which the detectives were on their way to investigate. Detective Reilly testified that he had known this informer for eight years and had received information from him at least fifty times, and that he considered the information to be ninety-five percent good, as convictions had resulted.
The detectives went to the Hawthorne Pleasure Club, and about 1:30 P.M., upon completing their check, as they stepped out of the door, Detective Reilly saw a red panel truck with the name `H. Klein' on its side going east on Hawthorne Avenue. The detectives, recognizing the truck as being similar to the one described by the informer, entered their car, and proceeded after the truck. The truck turned a corner and the detectives lost sight of it, and when they came upon it again, it was parked and the driver was absent. The detectives did not stop, but went on further and waited until the truck came along again, at which time they stopped it. They identified themselves and told Mr. Klein that he was in the lottery business which he denied, and that they intended to search the truck to which he shrugged his shoulders. A search of the truck was conducted by the officers and a slip of paper with lottery bets on it was found in the ash tray. Mr. Klein was also searched but no slips were found on his person. The detective also testified that no search warrant was procured; that the informer had not given him any information as to any definite route or particular stops made by the truck; that but for the information received they would not have had any reason for stopping the truck.
The Federal Constitution and the Constitution of New Jersey guarantee that citizens shall be free of unreasonable searches and seizures, and provide that no warrant for search shall issue except upon probable cause supported by oath or affirmation. It is basic in the law of search and seizure that a search without a warrant may be carried on only under exceptional circumstances. McDonald v. United States, 335 U.S. 451 [69 S.Ct. 191, 93 L.Ed. 153] (1948). An exceptional circumstance which may permit a search without a warrant is the commission of a crime in the presence of the officers, United States v. Rabinowitz, 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653] (1950), or where the officers have reasonable grounds to believe that the defendant was in the act of committing a crime at the *564 time they stopped him and conducted the search. Brinegar v. United States, 338 U.S. 160 [69 S.Ct. 1302, 93 L.Ed. 1879] (1949). As it is conceded that the officers in this matter had not procured a search warrant, the issue to be decided, under the facts presented, is whether the detectives had reasonable grounds to believe that this defendant was in the act of committing a crime at the time they stopped the truck and conducted the search. State v. Watson, 73 N.J. Super. 477 (Cty. Ct. 1962). Probable cause exists `if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed.' Henry v. United States, 361 U.S. 98, 102 [80 S.Ct. 168, 4 L.Ed.2d 134] (1959). However, the search is not made legal by the fact that it turns up illicit fruits. `In law it is good or bad when it starts and does not change character from its success.' United States v. Di Re, 332 U.S. 581 [68 S.Ct. 222, 92 L.Ed. 210] (1948).
The judicial determination of whether probable cause existed, which is made after the fact, should be based upon the knowledge present in the minds of the detectives immediately prior to, or contemporaneously with, the search. In Brinegar, Justice Rutledge in referring to probable cause stated (338 U.S., at p. 175 [69 S.Ct., at p. 1310]):
`In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.'
An examination of the practical and factual considerations in this case reveals that Detective Reilly received the phone call from the informer at a public booth which admittedly was within a block and a half from the Newark Municipal Court. There was, at least, the opportunity to take this information before a magistrate and make application for a search warrant, although it does not appear that such information would be sufficient to support the granting of a warrant. See State v. Racanelli, 74 N.J. Super. 420 (Cty. Ct. 1962). There is nothing to indicate that these detectives had any information prior to the telephone call that anyone by the name of E. Klein or H. Klein was engaged in or suspected of gambling violations or that such person was under any type of surveillance. The defendant was not observed leaving or entering any place known to be a habitat of gamblers, or was he seen going from house to house as the informer said was his practice, and the evidence is devoid of any showing that defendant was engaged in any offense which gave the officers cause to stop him other than their reliance on the telephone call. The information did not contain any description of the driver but that he would be operating a red panel truck with the name `E. Klein' or `H. Klein' on it, and apparently, this is the totality of what the detectives were able to see from the moment they fortuitously caught sight of the truck until the moment they stopped it *565 and conducted the search. Although this observation happened to coincide with the informer's description, this fact in itself could not render probable the conclusion that this individual was engaged in illegal activities. Since there was not an immediate or an extended surveillance undertaken to give any indication whether defendant intended to abandon whatever course of conduct he was pursuing, it cannot therefore be considered a situation of emergency which might allow for a search without a warrant. McDonald v. United States, supra. The defendant's failure to protest vigorously the search of the vehicle cannot be used as the basis for an inference that the defendant was then probably violating the law. The place for defenses is the court room, not the public street. To submit quietly does not destroy the presumption of innocence. United States v. Di Re, 332 U.S., at pp. 594-595 [68 S.Ct., at p. 228].
In Brinegar, supra, the defendant was apprehended and searched as a violator of the Liquor Enforcement Act of 1936 (49 Stat. 1928). He was operating a motor vehicle, and the circumstances indicated that he was coming from an area which was a known source of supply of alcoholic beverages, and proceeding to an area where sale of such beverages was prohibited. Prior to the apprehension, he had been in illicit liquor operations, and was under police surveillance. The Supreme Court upheld the search because of the quantum of knowledge in the possession of the officers at the time of the search coupled with the actions of the defendant in the operation of his vehicles prior to the arrest. There are not such factors evident in the matter at bar which could reasonably lead the officers to the same conclusion of illegal activity as are present in Brinegar.
In Draper v. United States, 358 U.S. 307 [79 S.Ct. 329, 3 L.Ed.2d 327] (1959), defendant was arrested and searched without a warrant by federal authorities in a railroad terminal. On September 3, 1956, an informer, considered reliable, told a federal narcotic agent that defendant had started selling narcotics in the agent's jurisdiction. On September 7, the informer told the agent that defendant had gone to Chicago by train on September 6 to purchase drugs and would return on September 8 or 9 by train. The informer gave a detailed physical description of Draper and of the clothing he was wearing, and said that he would be carrying a tan zipper bag and was known to walk very fast. In the railroad terminal on September 9, the defendant with these same physical characteristics stepped off the train wearing the same clothes, carrying a tan zipper bag and walked fast toward the exit. The arrest and search were upheld by the Supreme Court because the verification of each minute detail of information by the officers gave rise to their having reasonable grounds to believe that the defendant had the narcotics in his possession. It might further be noted that such narcotics if not seized would have been dissipated into the drug traffic, and, certainly, the officers were therefore faced with an emergent situation.
*566 In the matter under consideration, the knowledge held by the detectives prior to, and contemporaneous with, the search was not of the quality of that possessed by the officers in Brinegar and Draper, supra. It is my determination that the officers did not have reasonable grounds to believe that defendant Klein was in the act of committing a crime at the time they stopped him and conducted the search. As there was no probable cause, the search must be deemed unreasonable and therefore unlawful.
For the foregoing reasons, the motion to suppress was granted.
I find no reason to alter my decision subsequent to the taking of additional testimony."
Upon oral argument the State emphasized the reliability of the information furnished to the police, contrasting it in that respect with the information communicated anonymously to the searching officers in State v. Scharfstein, supra. The reliability of the informer, and thus of his information, is a factor to be considered as the court assays the totality of the evidence bearing upon the many faceted problem of probable cause for an otherwise unlawful search and seizure. Absence of proof of such reliability may vitiate the search, as in Scharfstein, supra. But reliability of information alone does not necessarily justify a search.
As Judge Matthews pointed out, a search without judicial warrant is justified only under exceptional circumstances. Upon a motion to suppress evidence obtained without a warrant, the court is called upon to determine whether the facts were legally sufficient to engender a belief in the mind of the searching officer that probable cause for the search existed. In reaching for the answer to this question, when all that is advanced in support of the search is hearsay information furnished by an informer, the court is entitled to consider, and should consider among other things, the efforts made by the searching officers to independently develop facts which support the probability that the hearsay information is correct. This, because the most reliable informer may obtain his information from completely unreliable sources. What the officers should do, and how much they should do, in this connection depends, of course, upon the nature of the crime and a *567 reasonable correlation of time available to the exigencies of the situation confronting the officers. We suggest no fixed rule in this regard. Suffice it to say that what was here reported to the police was the existence of continuing unlawful activity of a type ordinarily requiring as ground for arrest sensual perception by the arresting officers.
In the circumstances presented, we think that respect for the rigid constitutional mandates governing search and seizure required the officers to gear their interception of the defendant, and the search of him and his motor vehicle, to the means available to acquire, at first hand, information pointing to the probability that defendant was engaged in illegal activity. This might have been accomplished by identifying defendant and referring to his prior criminal record, if any, or by surveillance of his workday to determine whether or not his stops on what appeared to be a baker's route were merely a blind for a lottery operation. For example, if defendant made a number of stops and did not take into the homes of his customers any bakery goods, it could readily be inferred that his business was other than it appeared to be. Again, light on the nature of defendant's business might have been shed by interviewing his customers. We mention only a few of many techniques available to police when, as here, arrest and search are not emergent. All, in our judgment, have direct bearing upon the reasonableness of a search when this type of crime is involved.
Buttressing its argument that the search of the vehicle was justified, the State cites Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In Carroll, and other federal cases which followed it, see Annotation 89 A.L.R.2d 715, 721 et seq. (1963), the search of an automobile in transit was made in connection with a suspected violation of the National Prohibition Act. That statute specifically provided for the seizure by the proper authorities of liquor discovered to be illegally transported, the seizure of the transporting vehicle, and the arrest of the person in charge thereof. There is reason to believe that the holdings *568 in Carroll and its successor cases are limited to searches and seizures made pursuant to the provisions of the National Prohibition Act and similar statutes. See United States v. Di Re, 332 U.S. 581, 584-585, 68 S.Ct. 222, 92 L.Ed. 210 (1947). Be this as it may, it is noteworthy that in Carroll the court, speaking through Chief Justice Taft, said that while the right to search, and the validity of the seizure, were not dependent on the right to arrest, they were nevertheless dependent on reasonable cause for the seizing officer to entertain the belief that the contents of the automobile offended against the law. 267 U.S., at p. 154, 45 S.Ct., at p. 285.
Thus, even if, as the State urges, the Carroll case is deemed to be authority for the broad proposition that the right to search a vehicle, as distinguished from a dwelling, is expanded by reason of the mobility of the vehicle (a question upon which we do not pass), probable cause for a belief that the vehicle contains evidence that a crime is being, or has been, committed is a requisite foundation for the search.
Affirmed.