95 N.J. Super. 209 (1967)
230 A.2d 516
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JESUS MEDERO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 17, 1967.
Decided May 26, 1967.
*212 Before Judges CONFORD, FOLEY and LEONARD.
Mr. Harold C. White argued the cause for appellant (Messrs. Ewart, Lomell, Adler & Kearney, attorneys).
Mr. Richard A. Grossman, Deputy Attorney General, argued the cause for respondent.
*213 The opinion of the court was delivered by LEONARD, J.A.D.
Defendant appeals from a judgment of conviction of selling lottery tickets (N.J.S. 2A:121-1), possessing lottery slips (N.J.S. 2A:121-3(b)), and keeping a place to which persons might resort for gambling (N.J.S. 2A:112-3), entered after a jury trial.

I
Defendant first asserts that the search warrant here involved is invalid in that (1) it was erroneous in its specific description of the particular area to be searched, and (2) there was no representation as to the reliability of the "informants" upon whose information the supporting affidavit was based.
We consider ground (1). The warrant designated the premises known as:
"Mederos Grocery, 122 East 4th St., Lakewood, N.J. and more particularly described as follows: the first floor, the second floor and cellar of a two-story building on the South side of East 4th St., Lakewood, N.J. immediately adjacent to and on the East Side of 121 club * * *."
Defendant argues that the premises that were actually searched were known as 120 East Fourth Street and were not known as 122.
The evidence discloses that although the premises where defendant operated his grocery originally had been two separate stores (120 and 122), nevertheless at the time of the raid and for some time prior thereto, they were operated as one, divided only by a partial partition. Although the individual doors to each store remained, the door to 120 had been completely blocked off by groceries for several months and since then the sole access to the combined premises was through the door at 122.
Defendant's argument on this point is without merit. The premises were quite thoroughly and specifically described, with the possible exception of the number. Even in that respect *214 the use of the number set forth in the warrant was justified. In all events, the description used was sufficient. State v. Daniels, 46 N.J. 428, 435-438 (1966). State v. Ratushny, 82 N.J. Super. 499 (App. Div. 1964), is not applicable to the circumstances here present.
We consider next defendant's additional attack on the search warrant: the insufficiency of the supporting affidavit. This affidavit was executed by Lieutenant Belitrand and therein he set forth that one of the facts, among others, that "establish the ground" for the application of the issuance of the search warrant and "the probable cause" of his belief that there was located in the described premises certain property or other paraphernalia used in connection with a lottery was: "A. I have been advised by known reliable informants that lottery bets are being placed at Jesus Medero's store, 122 East Fourth St., Lakewood, N.J."
Defendant, relying upon State v. Ratushny, supra, 82 N.J. Super., at pp. 503-504, argues that the affidavit is defective because "there is no representation as to the reliability of the informer" contained therein and because it does not contain "a good faith representation by the police that there is good reason to believe the statement of the informer, either from past experience or other stated information in their possession."
If the affidavit contained merely "A," as above quoted, as the sole fact upon which the detective relied, we would agree with defendant's argument. However, the affidavit disclosed that the affiant's belief was based additionally upon his own surveillance, physical evidence (slips and receipts) secured from defendant by informants at the direction of the police, defendant's prior arrest for possession of number slips, and finally, the affiant's experience as a police officer who had investigated numerous gambling violations. Thus the affidavit in toto detailed sufficient underlying facts and circumstances to establish probable cause for the issuance of the search warrant. State v. Macri, 39 N.J. 250, 256-263 (1963).
*215 Therefore, we conclude that the warrant was valid and that the court properly refused to suppress the evidence obtained thereunder.

II
Defendant next alleges that prejudicial error was committed by the trial court in allowing into evidence, over objection. State Exhibit S-5, which was a lottery slip allegedly sold by defendant to an informant.
Lieutenant Herbert, an aide in the Ocean County Prosecutor's office, testified that on the day of the raid and of defendant's apprehension he directed an informant to make a bet on number 612 at defendant's store; he saw the informant enter the store and speak with defendant for a few moments, whereupon the informer immediately returned to him and handed him the slip (S-5) containing the number 612 thereon, in code. Herbert further testified that during the search of defendant's premises the police found a bag therein containing a corresponding slip bearing the identical number and code markings.
Defendant's primary argument is that S-5 should not have been received in evidence because it is the product of hearsay testimony, i.e., the informer was the only person who could testify that he placed a bet with defendant on the number which was noted on the slip. The argument is without merit. No hearsay testimony was adduced. The witness did not testify that the informer told him he had placed the bet with defendant. The exhibit was physical, tangible evidence which, together with the facts testified to, tended circumstantially to indicate defendant's guilt.
If it is argued that the exhibit was not sufficiently connected with defendant without testimony by the informer, this objection is overcome by the subsequent admission of testimony that the corresponding slip for this number play was found in a bag on defendant's premises, both of which were introduced into evidence.
*216 Defendant also argues that it was error for the State to fail to disclose the identity of the informer or to produce him as a witness. At the trial defendant made no specific request or demand for either. (It is to be noted that the slip corresponding to Exhibit S-5, found on defendant's premises, which we have examined, contained the name "Choary" thereon.) In view thereof defendant cannot now for the first time raise the issue of nondisclosure of the informer. State v. Burnett, 79 N.J. Super. 242, 248 (App. Div. 1963), affirmed 42 N.J. 377 (1964).

III
We consider, next, defendant's contention that certain portions of the testimony of Lieutenant Herbert were erroneously admitted into evidence, over objection, and were prejudicial. This witness testified for the State, among other things, as an expert on gambling activities. On direct examination he had related his experiences in that field and in the course of describing the operation of the "numbers" business in that county, and particularly the method of selecting the "winning number," he stated:
"This is all done on the upper level. All this is syndicated crime. It is economically impossible for a small numbers operator to exist, or a small horse bookie-bookmaker to exist."
Defense counsel objected, but was overruled, and the witness finished his answer:
"and therefore the method of determining the winning number is established on a very high level. Not in Ocean County. Probably the fourth or fifth echelon."
Again on redirect examination, this witness was attempting to explain the separation of number slips and the money bet thereon and the alleged discrepancy between the two in relation to what was found in defendant's store and stated:
*217 "Oh, this is almost absolutely necessary in any type of gambling operation. The reason for this is to insulate as many people as possible from a prosecution. Known gangsters * * *"
Defendant objected, but the witness not waiting for the court to rule continued:
"* * * will never carry slips."
Defendant again objected and moved to strike this testimony. Although the court suggested that the prosecutor confine himself to "the normal practice * * * in this type of operation," the foregoing testimony was not stricken.
This witness's reference to "syndicated crime," and "known gangsters" was in our judgment inflammatory and defendant "suffered manifest wrong or injury" thereby. Defendant was not being tried for being a member of a syndicated gambling ring or for otherwise being associated with known gangsters. Not every gambling offender is necessarily a part of a larger operation; a particular offense may be isolated and involve only defendant himself. State v. Ivan, 33 N.J. 197, 203 (1960).
Although uniformity in sentencing of gambling offenders on the basis of the factor, among others, that such operations are generally syndicated, "is an ideal of law enforcement," State v. DeStasio, 49 N.J. 247 (1967), it cannot be presumed in a particular jury trial that evidence of numbers operations by the defendant is necessarily evidence that he is a member of a "syndicate" conducted by "known gangsters." The State cannot be permitted, in the guise of expert testimony as to what lottery slips mean and how lottery operations are conducted, to convey to the jury that the particular defendant is a participant in syndicated crime being conducted by known gangsters. To do so would obviously be to prejudice the rights of such defendant to a fair and impartial trial confined to the specific charge laid and proved against him.
*218 We find defendant's objection to this testimony to have been timely and its admission to have been prejudicial, mandating a reversal and a remand for a new trial.

IV
Both Lieutenant Herbert and Lieutenant Belitrand testified as to certain slips found in defendant's store and voiced the opinion that these were number slips used in a lottery. However, on cross-examination, each conceded that these slips could represent totals on an adding machine of grocery items purchased in the store. By reason of this concession, defendant argues that the opinion testimony of these officers with reference to these slips was insufficient to sustain a conviction. A similar argument was rejected in State v. Fiorello, supra, 36 N.J., at p. 91. This point is without merit.

V
Defendant finally argues that his motion for acquittal made at the end of the State's case should have been granted. Viewing the State's proofs on all counts of the indictment in their entirety and giving the State the benefit of all proper inferences therefrom from which a conclusion of guilt could properly be drawn, we determine that the trial court did not err in refusing to grant the motion. State v. Smith, 32 N.J. 501, 521 (1960), cert. denied 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961).
For the reasons heretofore stated in III, defendant's conviction is reversed and the matter is remanded for a new trial.
So ordered.