## STATE OF CONNECTICUT *v.* ANONYMOUS (1971–19)

### APPELLATE DIVISION OF THE CIRCUIT COURT

DEARINGTON, J. The defendant was found guilty by a jury of violating § 53-298 of the General Statutes, relating to policy, a form of betting. It is unnecessary in our review to relate in detail the circumstances of the alleged offense. It suffices to note that the state produced evidence to prove and claimed to have proved that the defendant was the owner of a restaurant. A sergeant in the criminal

intelligence division of the state police, together with other officers, entered the restaurant armed with a search warrant. When they entered, an undercover agent, a state trooper, was on the premises. Before entering through a rear door, the sergeant had a conversation with the trooper through a rear window adjacent to the door. As a result of the conversation, the sergeant had occasion to look under a pile of dishes in the kitchen of the restaurant, where he found a piece of paper. He concluded from his training and experience that the items on the paper represented policy bets, and he arrested the defendant. The piece of paper was admitted in evidence over the defendant's objection. The undercover agent had arrived at the restaurant earlier that morning and had overheard a conversation between the defendant and an older man, although he did not hear the precise words being spoken. This man had just written on the inside of a matchbook cover. The man gave the defendant two $1 bills, and thereafter the defendant took the matchbook cover, went to a telephone in the kitchen, and made a call. After completing the call, the defendant went to a pile of dishes and placed either the matchbook cover or a slip of paper under the dishes.

The defendant has filed a lengthy brief in support of numerous assignments of error commencing with the court's rulings on preliminary motions and claiming further errors in the trial arising from rulings on evidence as well as in the court's charge to the jury. Upon a review of the entire case as briefed and argued, we conclude that a decision upon one of the defendant's assignments of error is dispositive of the appeal. This assignment relates to testimony concerning organized or syndicated crime.

The sergeant, who qualified as an expert witness, testified that the piece of paper admitted in evidence was of the sort used in policy playing and in his

opinion contained six policy bets. He "explained the significance and meaning of the markings thereon, in accordance with the modern method of prosecuting cases of this type." *State* v. *DelVecchio,* 145 Conn. 549, 553; *State* v. *Johnson,* 140 Conn. 560, 563. Such a witness may describe the manner in which a numbers game is conducted. *State* v. *Grosso,* 139 Conn. 229, 233; see cases such as *Moore* v. *United States,* 394 F.2d 818; *People* v. *Newman,* 24 Cal. 2d 168; *Commonwealth* v. *Boyle,* 346 Mass. 1; *State* v. *Saussele,* 265 S.W.2d 290 (Mo.); *State* v. *Fiorello,* 36 N.J. 80; note, 100 A.L.R.2d 1433, 1437 § 2, and cases cited.

The witness then testified, over objections, that in his opinion the defendant would fall into the category of a "bookie," described by him as a person who accepts bets from an individual who wants to place a bet. The court has a wide discretion in admitting the testimony of an expert on a subject upon which the jury may have little knowledge. "The situation was of such a nature as to require an expert to express an opinion on the precise question upon which the . . . [jury] ultimately had to pass." *State* v. *Johnson,* supra; *State* v. *DelVecchio,* supra. The court did not abuse its discretion in admitting such testimony.

Thereafter, on direct examination of the witness, the following occurred: "Q.—And again, based on your training and experience, Sergeant, would you describe the manner in which a policy operation is conducted? A.—Any given individual may place a policy bet, on the number. It goes through a bookie, or runner to a bookie—I may say there are different ways it can be handled by a person on the——" At this point the jury were excused on motion of the defendant, who claimed that the question called for an answer which would encompass the entire organization of policy. "The court: Now, all these

things that he's just said about 'bookie'—I mean 'runners' and all that, you haven't any evidence to substantiate he does that, or have you—I don't know. The prosecutor: Well, it's not evidence that's going to be introduced in court, if the court please. This is evidence solely out of the expert testimony, Your Honor." A lengthy colloquy by the court, the prosecutor and the defendant's counsel ensued. The defendant appeared not to object to the witness' expressing an opinion as to the general mechanics of policy; rather the defendant objected to testimony placing him in the entire organization of policy without there being evidence to support such an opinion. The court stated it would allow such testimony "if you tie it right into this kind of an exhibit. . . . I want you to be specific as possible when you tie it into the exhibit. The prosecutor: Yes, sir. I think counsel's objection is to any mention of 'syndicate' or 'organization.'" Thereafter, the witness was asked what the defendant would do after the bets had been made, and his answer was, "The individual bets received by a receiver of bets would be called out, usually, by telephone to a central office and recorded . . . ." When the witness was asked if a person could engage in an individual operation, his answer was "No." "Q.—Why would it not be permitted, Sergeant? A.—The operation of policy in this area in Connecticut, specifically, is governed by a syndicate operation. In my opinion, there is no such thing as an independent bookie. He would not be allowed to operate his own individual private operation, when he would receive the bets and pay off the percentages, because he would be cutting in on someone else's territory, if you will . . . . He would be run out of business, and in one way or another, either physically, or through an explanation to him that this was not allowed . . . that he would have to go along and take care of whatever other

people were involved. If it became to use, physical means, I personally, believe would be used [sic]."

Such testimony and similar testimony came in over repeated objections of the defendant, and repeated exceptions were taken. In many instances the defendant failed to observe the requirements of § 226 of the Practice Book. *Mercanti* v. *Persson*, 160 Conn. 468, 476; *Casalo* v. *Claro*, 147 Conn. 625, 628-30. The reasons for such objections, however, were stated at some length following the initial objection discussed above, and the court was cognizant of the defendant's grounds for such objections.

Such testimony went beyond the general modus operandi of bookmaking or policy playing with which the defendant was charged, and it tended to implicate the defendant in organized and syndicated crime. Whether the defendant was a member of a syndicate was not a relevant issue. Moreover there was no evidence, other than speculation, strong as that might be, that the defendant was connected with a syndicate. "Like other evidence, expert testimony is not admissible as to a matter not in issue." 2 Wharton, Criminal Evidence (12th Ed.) § 515. "Since expert testimony constitutes an exception to the general rules of evidence—an exception founded upon necessity—the admission of such testimony should be limited within the bounds of necessity. . . . In no case, of course, should expert opinion be received upon immaterial or irrelevant matters . . . not related to any issue." 31 Am. Jur. 2d, Expert and Opinion Evidence, § 20.

In *State* v. *Medero*, 95 N.J. Super. 209, the defendant was convicted of selling lottery tickets, possessing lottery slips and keeping a place to which people might resort for gambling. A police officer who qualified as an expert, in describing the operation of

the "numbers" business in that county and the
method of selecting the winning number, testified
(p. 216): "This is all done on the upper level. All
this is syndicated crime. It is economically impos-
sible for a small numbers operator to exist, or a
small horse bookie-bookmaker to exist." In attempt-
ing to explain the discrepancy between number slips
and the money bet in relation to what was found in
the defendant's store, the officer stated: "Known
gangsters will never carry slips." In reversing the
conviction, the court held (p. 217) that such lan-
guage was inflammatory and that the defendant
" 'suffered manifest wrong or injury' thereby." The
defendant "was not being tried for being a member
of a syndicated gambling ring or for otherwise being
associated with known gangsters. Not every gam-
bling offender is necessarily a part of a larger
operation; a particular offense may be isolated and
involve only [the] defendant himself. . . . The
State cannot be permitted, in the guise of expert
testimony as to what lottery slips mean and how
lottery operations are conducted, to convey to the
jury that the particular defendant is a participant
in syndicated crime being conducted by known gang-
sters. To do so would obviously be to prejudice the
rights of such defendant to a fair and impartial trial
confined to the specific charge laid and proved
against him."

We think the defendant's objections were well
taken. The question arises whether such testimony
constituted reversible error. An appellant has the
burden of establishing that there has been an erro-
neous ruling which was probably harmful to him.
*Obermeier* v. *Nielsen*, 158 Conn. 8, 13. The defend-
ant was not charged with conspiracy but with one
count of policy operation, and the testimony of the
expert witness permitted the jury to indulge in
guess, surmise and speculation and may well have

affected the jury's judgment. See *State* v. *Ferraro*, 160 Conn. 42, 46. On the record, we cannot say that the ruling could not reasonably have affected the result and that it was not probably harmful.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion CASALE and ARMENTANO, Js., concurred.