974 A.2d 1038

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. QUINN MARSHALL, DEFENDANT–RESPONDENT.

Argued March 24, 2009—Decided July 21, 2009.

*Frank Muroski*, Deputy Attorney General, argued the cause for appellant (*Anne Milgram*, Attorney General of New Jersey, attorney).

*Alison S. Perrone,* Designated Counsel, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney; *Ms. Perrone* and *Eric A. Gang,* Designated Counsel, on the briefs).

Justice WALLACE, JR. delivered the opinion of the Court.

This is a search and seizure case. The question is whether the trial court properly issued a search warrant, conditioned on verification by the police of the particular apartment to be searched inside a two-unit apartment building. The Appellate Division held that the warrant was invalid and suppressed the evidence because the trial court "directed the police to ascertain the facts needed to accurately describe the place to be searched without further judicial oversight or review." *State v. Marshall,* 398 *N.J.Super.* 92, 97, 939 *A.*2d 813 (App.Div.2008). We agree and affirm.

## I.

The facts are largely undisputed and derived in part from the affidavit Detective Michael Novembre of the Mercer County Prosecutor's Office submitted in support of the search warrant. On October 25, 2004, Novembre requested a warrant to search 105 Wayne Avenue in Trenton. There were two separate units in the building and Novembre did not know which unit Allen Daniels, the principal suspect, had entered to obtain drugs on one occasion. Consequently, Novembre requested that the warrant be issued to search the apartment at 105 Wayne Avenue to which Allen Daniels had "possession, custody, control, or access."

In the affidavit, Novembre related the background leading up to the search warrant request. He explained that during the months of August and September 2004, the Trenton police, with the assistance of an unproven confidential informant, focused their investigation on Daniels. During that period, the informant made a controlled buy from Daniels and his brother "Booby" at 150 Hoffman Avenue, Trenton.

Sometime in September 2004, the Prosecutor's Office took over the investigation of Daniels' drug activities. On September 21, 2004, Novembre and Sergeant Frascella met with the informant. At that time the informant indicated that Daniels had moved his residence to an apartment in Lawrence Township and also utilized a different apartment at or around 9 Sanhican Drive, Trenton, to store heroin and cocaine. Following that meeting, the police arranged for the informant to make a series of controlled buys of drugs from Daniels. As a result of those controlled buys, the police obtained evidence of Daniels' drug activity at three locations: 150 Hoffman Avenue; his residence in Lawrence Township; and an apartment at 9 Sanhican Drive.

On October 20, 2004, Novembre applied for search warrants for Daniels, his brother "Booby," Daniels' car, and the three locations where the controlled buys occurred. In anticipation of executing the search warrants, on October 21, 2004, Novembre arranged for surveillance of Daniels' residence while the informant attempted a buy of cocaine and heroin. The informant contacted and met Daniels at the Hoffman Avenue address. While there, Daniels told the informant that they needed to "take a ride" to obtain the heroin. The police observed Daniels and the informant enter Daniels' car and drive to 105 Wayne Avenue. Once there, Daniels exited the car, walked to the front door, waited for someone to open it, and entered. After approximately five minutes, Daniels returned to the car accompanied by another person, unknown to the police at that time but later identified as defendant, Quinn Marshall. The informant, who had remained in the car, paid Daniels and received the drugs. The occupants in the car drove back to the Hoffman Street location.

Later in the debriefing with the police, the informant identified the other person with Daniels as Daniels' cousin, known as King Zeke, but the informant did not know the location inside the building from which Daniels retrieved the drugs. The informant also recounted that Daniels had indicated that he would be taking drugs to the Sanhican Drive location.

Novembre obtained information from Public Service Gas and Electric that there were two apartment units inside 105 Wayne Avenue and that Daniels was not listed on either account. Novembre also related that neither the Division of Motor Vehicles nor the State Bureau of Identification was able to assist in identifying which unit within 105 Wayne Avenue Daniels had entered.

Novembre requested a search warrant for the apartment within the premises of 105 Wayne Avenue to which "Allen Daniels, A/K/A 'Marty' has possession, custody, control or access." In addition, Novembre requested that the warrant include the following conditional language:

> [t]he search warrant for the premise[s] will be executed if and only if the following specifically described events which give rise to probable cause actually occur so as to protect against premature execution of the search warrant, namely: (1) that Allen Daniels is secured outside 105 Wayne Avenue and (2) that a search of Allen Daniels reveals documentation or keys which identify the specific apartment inside 105 Wayne Avenue to which Allen Daniels has possession, custody, control, or access, or if he divulges such information to the officers executing the search warrant for his person. In the event that the officers are unable to identify the apartment utilized by Allen Daniels through the abovementioned means, this premises warrant will not be executed.

The trial court approved the search warrant for the premises and included virtually identical conditional language to that proposed in Novembre's affidavit. The court signed the search warrant on October 25, 2004, at 8:40 a.m.

## B.

Four days later, on October 29, 2004, at approximately 8:10 a.m., the police executed the search warrants for the multiple locations other than 105 Wayne Avenue and sought to satisfy the conditions on the warrant for 105 Wayne Avenue. The police found Daniels and his girlfriend at the Lawrenceville address. They immediately placed Daniels under arrest and informed him of his rights under *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966). Lieutenant Straniero then asked Daniels which apartment he frequents at 105 Wayne Avenue.

Daniels replied that he does not stay there. After further questioning, Daniels revealed that King Zeke stayed in the first floor apartment. When Straniero asked how many times he had been to 105 Wayne Avenue, Daniels responded, "I been over there, you don't need to ask me that question. You know I been over there." Based on that information, Straniero instructed other officers to execute the search warrant in the first floor apartment at 105 Wayne Avenue. The officers did so and found defendant there. The search of the apartment revealed cocaine, marijuana, and several firearms. Defendant was arrested and charged with various drug and weapons offenses.

## C.

Defendant was subsequently indicted. He filed a motion to suppress the evidence seized during the search of the apartment at 105 Wayne Avenue. At the hearing, Lieutenant Straniero testified to the facts previously related. Defendant presented the testimony of Daniels, who by then had reached a plea agreement with the State. Daniels testified that at the time he was arrested, he refused to answer Straniero's question regarding whether King Zeke lived at 105 Wayne Avenue. Daniels stated that he did not know defendant was living at 105 Wayne Avenue, but that he had been in both apartments. Daniels said the police never asked him whether he had access to the second floor apartment.

Defendant also testified. He said that Daniels was his cousin and that at various times he and Daniels had visited both apartments at 105 Wayne Avenue.

The trial court found that the conditions contained in the warrant were satisfied and that there was probable cause to issue the search warrant for the apartment at 105 Wayne Avenue. The court rejected defendant's argument that the conditions in the warrant delegated the court's fact finding functions to the police. Consequently, it denied the motion to suppress.

On appeal, the Appellate Division reversed in a reported decision. *Marshall, supra,* 398 *N.J.Super.* at 111, 939 *A.*2d 813. The

panel held that the warrant should not have been issued because the affidavit failed to sufficiently describe the premises to be searched and "directed the police to ascertain the facts needed to accurately describe the place to be searched without further judicial oversight or review." *Id.* at 97, 939 *A.*2d 813. We granted the State's petition for certification. 196 *N.J.* 461, 957 *A.*2d 1170 (2008).

## II.

The legal principles controlling this dispute are straightforward. Both the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution provide in nearly identical language that "no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized." *N.J. Const.* art. I, ¶ 7. Thus, a warrant should not issue unless the court is satisfied that there is "probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched." *State v. Sullivan,* 169 *N.J.* 204, 210, 777 *A.*2d 60 (2001).

We recently explained that

[t]he probable cause standard is a well-grounded suspicion that a crime has been or is being committed. Probable cause exists where the facts and circumstances within ... [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed. The substance of all the definitions of probable cause is a reasonable ground for belief of guilt.

[*State v. O'Neal,* 190 *N.J.* 601, 612, 921 *A.*2d 1079 (2007) (quoting *State v. Moore,* 181 *N.J.* 40, 45–46, 853 *A.*2d 903 (2004) (alterations in original)).]

The test requires the court to " 'make a practical, common sense determination whether, given all of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Ibid.* (quoting *Moore, supra,* 181 *N.J.* at 46, 853 *A.*2d 903).

■ When a search warrant is sought, "the probable cause determination must be made based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." *Schneider v. Simonini*, 163 *N.J.* 336, 363, 749 *A.*2d 336 (2000); *see also State v. Jones*, 179 *N.J.* 377, 403, 846 *A.*2d 569 (2004) (same). As one commentator explained, "[l]imiting consideration to the 'four corners' of the evidence before the issuing magistrate assures that the magistrate was in a position to adequately perform the constitutional function of providing independent judicial review prior to executive intrusions on individual privacy." Kevin G. Byrnes, *New Jersey Arrest, Search, & Seizure* § 5:2–5 at 78 (2008–09); *see also State v. Wilson*, 178 *N.J.* 7, 14, 833 *A.*2d 1087 (2003) (same); *State v. Evers*, 175 *N.J.* 355, 383–85, 815 *A.*2d 432 (2003) (finding probable cause based upon "four corners" examination of search warrant application materials).

■ The particularity requirement is uncomplicated. Generally it mandates that "the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 *U.S.* 498, 503, 45 *S.Ct.* 414, 416, 69 *L.Ed.* 757, 760 (1925). It is widely recognized that when a multi-unit building is involved, the affidavit in support of the search warrant must exclude those units for which police do not have probable cause. *Maryland v. Garrison*, 480 *U.S.* 79, 85, 107 *S.Ct.* 1013, 1017, 94 *L.Ed.*2d 72, 81 (1987). In *Garrison*, the Court declared that:

> The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." [*Id.* at 84, 107 *S.Ct.* at 1016, 94 *L.Ed.*2d at 80–81 (quoting *United States v. Ross*, 456 *U.S.* 798, 824, 102 *S.Ct.* 2157, 2172, 72 *L.Ed.*2d 572, 593 (1982)).]

■ Additionally, both the Federal and New Jersey Constitutions require that the warrant be issued by a "neutral and

detached magistrate." *See United States v. U.S. Dist. Ct.,* 407 *U.S.* 297, 316, 92 *S.Ct.* 2125, 2136, 32 *L.Ed.*2d 752, 765 (1972); *State v. Frankel,* 179 *N.J.* 586, 597–98, 847 *A.*2d 561 (2004). As reasoned by Justice Jackson, the purpose behind that rule is relatively simple:

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. [*Johnson v. United States,* 333 *U.S.* 10, 13–14, 68 *S.Ct.* 367, 369, 92 *L.Ed.* 436, 440 (1948).]

 Although all warrantless searches are presumptively invalid unless they fall " 'within one of the few well-delineated exceptions to the warrant requirement,' " *State v. Johnson,* 193 *N.J.* 528, 552, 940 *A.*2d 1185 (2008) (quoting *State v. Pineiro,* 181 *N.J.* 13, 19–20, 853 *A.*2d 887 (2004)), a search executed pursuant to a warrant is presumed valid, *Jones, supra,* 179 *N.J.* at 388, 846 *A.*2d 569. As a consequence, a defendant challenging a warrant "has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.' " *Ibid.* (quoting *State v. Valencia,* 93 *N.J.* 126, 133, 459 *A.*2d 1149 (1983)). We accord substantial deference to a trial court's determination that there was probable cause to issue a warrant. *Id.* at 388–89, 846 *A.*2d 569.

III.

A.

 With the above framework in mind, we turn to the issues in the present case. Before the Appellate Division, the State sought to justify the warrant based essentially on its contention that probable cause existed to search the apartment at 105 Wayne Avenue to which Daniels had "possession, custody, control or access," and that the warrant sufficiently described the place to be searched. The Appellate Division disagreed and concluded that "[a] warrant that describes the premises to be searched without

enough clarity to preclude an indiscriminate search of other uninvolved units cannot pass constitutional muster." *Marshall, supra,* 398 *N.J.Super.* at 110, 939 *A.*2d 813.

The State's affidavit in support of the search warrant clearly indicated that the police did not know in which of the two apartments at 105 Wayne Avenue the asserted criminal activity took place. As a result, the search warrant was issued in violation of the requirement in our constitution that the warrant particularly describe the place to be searched.

Moreover, the terms of the warrant that delineated the conditions that needed to be satisfied prior to the police execution of the warrant were deficient in at least two ways. First, the probable cause determination could not be made within the four corners of the affidavit as the anticipated conditions listed were to be satisfied after the warrant was issued. Second, because the police were authorized to determine if the conditions were satisfied, the role of the neutral and detached magistrate was delegated to the police. That is, "[t]he validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate." *Garrison, supra,* 480 *U.S.* at 85, 107 *S.Ct.* at 1017, 94 *L.Ed.*2d at 81. The failure of the police, prior to the issuance of the warrant, to inform the court by affidavit, by telephone, or in person, of the evidence it developed to determine the particular apartment unit that Daniels entered to retrieve drugs rendered the search warrant invalid.

### B.

In urging this Court to reach a contrary conclusion, the State cites *Garrison, supra,* 480 *U.S.* 79, 107 *S.Ct.* 1013, 94 *L.Ed.*2d 72, and this Court's opinion in *State v. Wright,* 61 *N.J.* 146, 293 *A.*2d 380 (1972), which cited approvingly *State v. Ratushny,* 82 *N.J.Super.* 499, 198 *A.*2d 131 (App.Div.1964). We turn now to discuss those three cases.

Although the State recognizes that the United States Supreme Court has not previously ruled on the validity of a search warrant similar to the one issued here, it urges that *Garrison* supports its position. In *Garrison, supra,* the trial court authorized a search warrant for a third-floor apartment, not knowing there were two apartments on the third floor. 480 *U.S.* at 80, 107 *S.Ct.* at 1014, 94 *L.Ed.*2d at 78. The police searched the apartment unit that was not occupied by the suspect and found contraband before they realized they were searching the wrong apartment. *Ibid.* The Supreme Court found that the "officers' conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment." *Id.* at 88, 107 *S.Ct.* at 1019, 94 *L.Ed.*2d at 83. However, in a footnote, the Court explained that if the police know there are two apartments, but do not know which one contains the illegal activity, then "[a] search pursuant to a warrant authorizing a search of the entire floor ... would present quite different issues from the ones before us in this case." *Id.* at 89 n. 13, 107 *S.Ct.* at 1019 n. 13, 94 *L.Ed.*2d at 83 n. 13.

To be sure, *Garrison* does not control the case before us. Nor do we know how the United States Supreme Court would decide a case with facts similar to those presented here. In any event, we need not concern ourselves with any prediction on that score because we rest our opinion on our interpretation of the New Jersey Constitution.

The State also relies on this Court's opinion in *Wright* and argues that the particularity requirement was satisfied in the present case by the reference in the warrant to the unit to which Daniels had "possession, custody, control, or access." In *Wright, supra,* the affidavit in support of the warrant outlined that the police had observed four known drug users enter and leave the premises. 61 *N.J.* at 148, 293 *A.*2d 380. The affidavit merely referred to the top floor of 203 Spruce Street and did not describe that the top floor contained three separate apartments. *Id.* at 148–49, 293 *A.*2d 380. The trial court approved the search war-

rant. *Id.* at 147–48, 293 *A*.2d 380. The defendant challenged the search on the grounds that the affidavit in support of the warrant failed to adequately describe the premises to be searched. *Id.* at 148, 293 *A*.2d 380. In rejecting that argument, this Court found no inaccuracy in the description in failing to indicate which of the three apartments was intended because "the affidavit did state that the intended apartment was the one that was in fact occupied by the defendant." *Id.* at 149, 293 *A*.2d 380. The Court then stated, "[w]e take this to have been the holding in *State v. Ratushny.*" *Ibid.* We explained that the "underlying reason for the requirement that there be an adequate description of the premises in a search warrant is to prevent the police officer from entering property which he has no authority to invade." *Ibid.* Further, the Court found support for its decision from the evidence at the suppression hearing demonstrating that several months before, the same police officers had searched that same apartment. *Ibid.*

We disagree that *Wright* dictates that we find the search warrant in the present case was valid. In *Wright*, at the time the warrant was sought, the police were aware of the actual apartment in which the defendant resided, and the defendant was found in that apartment when the warrant was executed. Here, unlike in *Wright*, at the time the warrant was issued the police did not know in which of the two apartments the alleged criminal activity took place, and Daniels, the focus of the investigation, did not reside at that address. We find no justification to expand the holding in *Wright* beyond the particular facts of that case. That is, in *Wright* the police at the time of seeking the warrant knew in which of the three apartments the defendant resided but failed to designate that apartment in the affidavit.

Additionally, the State contends that the warrant complied with the conditions delineated in *Ratushny*. We disagree. In *Ratushny, supra*, the police sought a warrant to search an apartment in which the defendant was allegedly engaged in illegal gambling activity. 82 *N.J.Super.* at 502, 198 *A*.2d 131. The trial court

suppressed the evidence from the search because the facts set forth in the affidavit were insufficient to justify a warrant. *Ibid.* The Appellate Division affirmed. *Id.* at 507, 198 *A.*2d 131. The panel observed that the affidavit failed to mention that there were four apartments in the building and that when probable cause is shown for searching only one apartment but the warrant authorizes a search of the entire building, the warrant is void. *Id.* at 504–05, 198 *A.*2d 131. The panel explained that "[t]he validity of a search warrant depends upon the showing made before the magistrate or judge who issues it." *Id.* at 506, 198 *A.*2d 131. Despite that conclusion, the panel offered guidance when the particular apartment number or location is not known and the police are justified in not inquiring for fear of alerting a suspect. *Ibid.* The panel suggested that in addition to a detailed description of the entire building, the affidavit should include "a phrase such as 'the premises occupied by [the defendant] and over which he has possession and control.' " *Id.* at 506–07, 198 *A.*2d 131 (alteration in original). The panel emphasized that such a general description "will pass muster only when it appears that a more specific description could not be obtained without endangering the secrecy of surveillance or the efficacy of an arrest, or there are equivalent justifying circumstances." *Id.* at 507, 198 *A.*2d 131.

The Appellate Division in this case rejected, as do we, the argument that the dictum in *Ratushny* supports the State's position that it was sufficient to generally describe the apartment unit in a multiple unit structure by referring only to the apartment to which Daniels had "possession, custody, control or access." Moreover, even if we were to accede to a broad reading of *Ratushny*, the State failed to establish why a more specific description of the apartment for which the warrant was sought could not have been obtained prior to seeking the warrant. According to the affidavit, the informant advised police that he knew King Zeke and that both King Zeke and Daniels exited the property at 105 Wayne Avenue. Yet, there was no evidence of any effort by the police to determine King Zeke's legal name or which, if any, apartment he resided in at 105 Wayne Avenue. The reference in the affidavit

was limited to investigations of Daniels' relationship with that address, not defendant's. Further, mere access to a particular apartment is not the kind of possession or control we believe the *Ratushny* panel required. Thus, even if we were to apply the dictum in *Ratushny*, the general description here would not pass muster because the nature of the circumstances either permitted the police to discover the specific apartment unit prior to obtaining the search warrant, or at minimum, would have allowed the police to return to the court to amplify the affidavit with the precise unit prior to executing the warrant.

We reiterate that a neutral and detached magistrate must determine probable cause that contraband will be found at a particular location, or that an offense is being committed there. Because that did not occur here, the search warrant was deficient.

## IV.

■■■ The State also asserts that, irrespective of any infirmities in the affidavit or warrant, suppression is not justified where the police follow the procedure approved by the trial court. The State urges that we not follow our rejection of the good-faith exception in *State v. Novembrino*, 105 *N.J.* 95, 519 *A.*2d 820 (1987). In contrast, defendant argues that the particularity and probable cause requirements are inexorably intertwined and that the failure to comply with the particularity requirement is not a technical error.

We agree with defendant's position. In *State v. Valencia*, 93 *N.J.* 126, 132, 459 *A.*2d 1149 (1983), we addressed a similar argument by the State in the context of a telephonic warrant request in which the officer read his unsworn affidavit to a judge and was not placed under oath. We explained that "[c]ourts in this State consistently have maintained that strict adherence to the protective rules governing search warrants is an integral part of the constitutional armory safeguarding citizens from unreasonable searches and seizures." *Id.* at 134, 459 *A.*2d 1149. We concluded that the "deviations from the rules governing search

warrants in the aggregate constitute material noncompliance with the rules governing search warrants." *Id.* at 136, 459 *A.*2d 1149. *See also State v. Johnson*, 168 *N.J.* 608, 623, 775 *A.*2d 1273 (2001) (noting that "to permit a good-faith exception to apply in respect of one element of the warrant, i.e. the no-knock provision, but not in respect of other elements would lead ultimately to a patchwork of incongruous case law").

In short, the failure to comply with the particularity requirement and the failure to have a neutral magistrate or judge determine whether the conditions in the warrant were satisfied are constitutional violations. We do not view those violations as "technical insufficiencies or irregularities," *R.* 3:5–7(g), justifying overlooking the deficiencies in the warrant. "We serve the criminal justice system best by enforcing clear and uniform rules whenever appropriate under the circumstances." *Johnson, supra,* 168 *N.J.* at 623, 775 *A.*2d 1273.

## V.

The judgment of the Appellate Division is affirmed.

Justice RIVERA–SOTO, dissenting.

As part of an extensive investigation into drug trafficking in Trenton, the police sought and secured a search warrant for a multi-family dwelling. Because the police had not been able to identify which unit in the multi-family dwelling was being used for illicit purposes without otherwise jeopardizing their investigation, they sought and were issued a search warrant that, entirely consistent with well-established precedent, provided a detailed description of the entire building but limited the search to " 'the premises occupied by [the defendant] and over which he has possession and control.' " *State v. Ratushny*, 82 *N.J.Super.* 499, 506–07, 198 *A.*2d 131 (App.Div.1964) (quoting *United States v. Hinton*, 219 *F.*2d 324, 326 (7th Cir.1955)). Solely by the brute force of numbers, the majority invalidates that warrant under the rubric that the description of the place to be searched did not

satisfy the particularity requirement of the Fourth Amendment to the United States Constitution, *U.S. Const.* amend. IV, and paragraph 7 of Article I of the New Jersey Constitution, *N.J. Const.* art. I, ¶ 7.

In doing so, the majority distinguishes into oblivion the prior precedent of this Court that authorizes the very warrant issued in this case, consigning that precedent and its antecedents to the ignominy of an unmarked grave. Additionally, the majority ignores the overwhelming weight of authority, both within and without New Jersey, which supports the issuance of the warrant in this case. Because those actions are unwarranted, I dissent.

## I.

For context, it is important to set forth, in a more robust manner, the facts relevant to this case. The Mercer County Prosecutor's Office took over, from the Trenton Police Department, an investigation of narcotics trafficking by Allen Daniels. As but one part of that investigation, on October 21, 2004, the investigators conducted a "controlled buy" of cocaine and heroin via a confidential informant.[1] On that date, the informant met Daniels at 150 Hoffman Avenue in the City of Trenton, one of Daniels's known locations, to purchase both cocaine and heroin. Daniels advised the informant that, although Daniels had the requested cocaine with him, they had to "take a ride" to get the heroin.

With the informant as a passenger, Daniels drove his car to 105 Wayne Avenue in Trenton. Upon arrival, Daniels instructed the informant to remain in the front passenger seat of the car, explaining that Daniels would return with the heroin. He disem-

---

[1] In a "controlled buy" by an informant, the informant is first searched by the police to insure he is not carrying any drugs or money; he is provided a sum of money to use in purchasing drugs; he is under police surveillance to, from and, to the extent possible, during the drug transaction; he is searched afterwards to retrieve the drugs purchased and any remaining money; and he is debriefed concerning the transaction.

barked from the car, knocked on the front door of 105 Wayne Avenue, and was admitted inside. Some five minutes later, Daniels returned to the car in the company of a person then identified as "King Zeke" and later identified as defendant Quinn Marshall; Daniels returned to his position behind the wheel and defendant sat on the rear passenger seat. While driving away, Daniels handed the cocaine and heroin to the informant, and the informant paid Daniels for the drugs, noticing that Daniels was carrying an "additional amount of cocaine and heroin." During the drive, Daniels advised the informant that Daniels had to take some drugs "down the hill," to 9 Sanhican Drive in Trenton, another of Daniels's drug locations. On the way there, Daniels dropped the informant off at their initial point of departure, 150 Hoffman Avenue. While continued police surveillance observed Daniels drive to 9 Sanhican Drive, the informant met with police, surrendered the drugs purchased, and described, first-hand, the details of the events also observed by the police during their surveillance.

As recounted in the affidavit tendered in support of the search warrant by Detective Michael Novembre of the Special Investigations Unit of the Mercer County Prosecutor's Office, "[i]nformation received from Public Service [ ] Electric [& Gas] reveal[ed] that there are two separate units inside 105 Wayne Avenue, Trenton, that are receiving service[ and that] Allen Daniels is not listed as the party receiving service in either unit." Because the police were unable to identify which of those two apartments contained the drugs, they requested "that a search warrant be issued for the apartment within the premise[s] of 105 Wayne Avenue to which Allen Daniels [a/k/a] 'Marty,' has possession, custody, control or access as previously described."

Based on the undisputable probable cause set forth in Det. Novembre's affidavit—and as part of a package of four separate warrants, all relating to Daniels's drug trafficking activities, that were to be executed essentially simultaneously—on October 25, 2004, the Superior Court authorized the police to search for illegal drugs and described the place to be searched as

a certain premise[s], more particularly described as 105 Wayne Avenue, Trenton, New Jersey. 105 Wayne Avenue is a two and a half story semi detached residence. There are five steps, covered with a green carpet[ ] that leads to a front porch. There are two white pillars that extend to an overhang on the porch. The white pillar nearest the steps has the numerals "105" affixed to it in black. Once on the porch, there is a white screen door directly in front of you. Directly behind the white screen door is the main entrance door. Directly to the left of the white screen door is one window trimmed in white with black wrought iron bars across it. On the second floor there are three windows trimmed in white, surrounded by green siding. On the half story there is one window trimmed in white surrounded by gray shingles. Directly to the left of 105 Wayne Avenue is an alley. Attached to the right of 105 Wayne Avenue is a house with no number affixed to it. The search warrant is sought for the apartment in 105 Wayne Avenue to which Allen Daniels [a/k/a] "Marty", has possession, custody, control or access.[2]

Because the investigation had revealed that 105 Wayne Avenue contained two apartments and the search warrant affidavit did not identify the precise apartment from which Daniels secured his illicit drugs, the warrant further commanded that

[t]he search warrant for the premise[s] will be executed if and only if the following specifically described events which give rise to probable cause actually occur so as to protect against premature execution of the search warrant, namely: (1) that Allen Daniels is secured outside 105 Wayne Avenue and (2) that a search of Allen Daniels reveals documentation or keys which identify the specific unit inside 105 Wayne Avenue to which Allen Daniels has possession, custody, control, or access, or if he divulges such information to the officers executing the search warrant for his person. In the event that the officers are unable to identify the premises utilized by Allen Daniels through the abovementioned means, this premises warrant will not be executed.

Complying with that limitation, on October 29, 2004, the officers first executed a warrant at 8211 Town Court North, Avalon Run Apartments, Lawrenceville, where Daniels was then staying with his girlfriend. The officers interviewed Daniels, who stated that "he has access to 105 Wayne Avenue, first floor apartment[,]" that "his friend 'King Zeke' lives in the first floor apartment[,]" and that "the entrance door to the first floor apartment is located on the left side of the first floor hallway." Armed with this more

---

[2] More accurately, the cited description appears in the recitals to the warrant; the operative portion of the warrant immediately following the conclusion that the issuing court was "satisfied that the grounds for the granting of this application for a search warrant exist" authorized the "search [of] 105 Wayne Avenue, Trenton, New Jersey, as previously described."

particularized information, the search warrant for 105 Wayne Avenue was executed on the first floor apartment, where eight ounces of crack cocaine, four pounds of marijuana and two weapons were seized; defendant—the tenant of that apartment who was later identified as the person who left 105 Wayne Avenue with Daniels on October 21, 2004 when Daniels collected the heroin he needed to sell to the informant and who was present when that sale occurred in Daniels's car—also was arrested.

Defendant was charged with a litany of drug offenses. He sought to suppress the items seized from his apartment pursuant to the search warrant on October 29, 2004; that motion was denied. Pursuant to a plea agreement, defendant pled guilty to one count of first-degree possession of cocaine in excess of five ounces with the intent to distribute, in violation of *N.J.S.A.* 2C:35–5(a)(1) and *N.J.S.A.* 2C:35–5(b)(1). Defendant was sentenced to a twelve-year term of imprisonment, subject to a mandatory period of parole ineligibility of four years; appropriate assessments, penalties and fees also were imposed.

## II.

Defendant appealed the denial of his suppression motion,[3] and the Appellate Division reversed. *State v. Marshall*, 398 *N.J.Super.* 92, 939 *A.*2d 813 (App.Div.2008). According to the Appellate Division, the warrant failed in the two key respects embodied in the warrant clause: the need for both probable cause to justify the search (the probable cause requirement) and a particular description of where the search is to be conducted and what is to be seized (the particularity requirement). Addressing first the probable cause requirement, the panel noted that the affidavit in support of the warrant "candidly acknowledged that [Det. Novembre] knew there were two separate apartments at 105 Wayne

---

[3] Pursuant to *R.* 3:5–7(d), the "[d]enial of a motion [to suppress] may be reviewed on appeal from a judgment of conviction notwithstanding that such judgment is entered following a plea of guilty."

Avenue and that he had no knowledge as to which apartment had been utilized by Daniels." *Id.* at 102, 939 *A.*2d 813. Against that setting, the panel unjustifiably "assume[d] from this and the conditions the judge placed on execution of the warrant that the judge was satisfied that probable cause to search 105 Wayne Avenue had *not* been established." *Ibid.* (emphasis in original). Prisoner to that assumption, the panel asserted that, "[h]ad [the trial judge] concluded otherwise, the warrant would have issued without a direction that the police obtain additional information regarding the particular location of the search." *Ibid.* Incorrectly conflating the two separate elements of the warrant clause— probable cause and particularity—the panel concluded that, because the description of the premises to be searched was, in the panel's view, incomplete, there somehow must have been insufficient probable cause presented to sustain the issuance of the warrant. *Id.* at 102–03, 939 *A.*2d 813.

Turning to the constitutional requirement that the warrant must "particularly describ[e] the place to be searched and the papers and things to be seized[,]" *U.S. Const.* amend. IV; *N.J. Const.* art. I, ¶ 7, the panel first gave lip service to the unquestioned proposition that, in describing a place to be searched or items to be seized, " 'reasonable accuracy' not 'pin-point precision' is required." *Id.* at 106, 939 *A.*2d 813 (quoting *State v. Wright*, 61 *N.J.* 146, 149, 293 *A.*2d 380 (1972)). It also acknowledged that "what constitutes a 'reasonably accurate' description of a unit within a multiple unit structure is inherently fact-sensitive and must be judged on a case-by-case basis" and that decisional precedents "demonstrate[ ] that the announcement of hard-and-fast rules as to what constitutes a sufficient description is not possible." *Ibid.* Summing up, the panel correctly noted that the sufficiency of a warrant's description of the place to be searched "is judged 'on a common sense basis rather than upon a super technical basis requiring elaborate specificity.' " *Id.* at 108, 939 *A.*2d 813 (quoting *State v. Daniels*, 46 *N.J.* 428, 437, 217 *A.*2d 610 (1966)).

However, the panel then relegated *Ratushny, supra,* to the netherworld of dictum. It roughly dispensed with the principles *Ratushny* explicitly set forth and concluded that its value as precedent retained relevance only in respect of "the thrust of that part of *Ratushny* which insists 'the search warrant must contain as specific a description of the particular area to be searched as the nature of the circumstances reasonably permit.' " *Id.* at 109, 939 *A.*2d 813 (quoting *Ratushny, supra,* 82 *N.J.Super.* at 506, 198 *A.*2d 131). It thus "reject[ed] the argument that *Ratushny* can be read as authorizing the issuance of a warrant that provides no greater detail than a reference to the apartment controlled or possessed by a particular person." *Id.* at 110, 939 *A.*2d 813. Contrary to *Ratushny*'s clear command, the panel concluded that "[a] warrant that describes the premises to be searched without enough clarity to preclude an indiscriminate search of other uninvolved units cannot pass constitutional muster." *Ibid.* (citing *Wright, supra,* 61 *N.J.* at 149, 293 *A.*2d 380).

Following that same tack, the majority confines *Ratushny, supra*—and, by extension, *Wright, supra*—to the dust bin of irrelevant precedent. *Ante* at 614–617, 974 *A.*2d at 1045–1046. Without focusing on the nuances of this case, the majority boldly concludes that "a neutral and detached magistrate must determine probable cause that contraband will be found at a particular location, or that an offense is being committed there." *Ante* at 617, 974 *A.*2d at 1046. It therefore states that, "[b]ecause that did not occur here, the search warrant was deficient." *Ibid.* That analysis and conclusion are wrong in two fundamental respects.

III.

A.

The Appellate Division and, to a slightly different extent, the majority have confused the separate and distinct portions of the constitutionally mandated warrant clause. Thus, we start with

first principles. The clause states plainly that "no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized." *N.J. Const.* art. I, ¶ 7.[4]

Because the constitutional injunction prohibits only unreasonable searches and seizures,[5] the warrant clause defines both probable cause and particularity, in the aggregate, as reasonableness substitutes or, perhaps more accurately, as antidotes/cures to unreasonableness. As to the former, it has long been the law in New Jersey that "[p]robable cause is said to be a reasonable basis for the 'belief' that a crime has been or is being committed. The quality of that belief is not precisely defined in our cases." *State v. Burnett*, 42 *N.J.* 377, 386, 201 *A.2d* 39 (1964). "We know it is something more than a raw suspicion but something less than a finding of guilt." *Ibid.* This Court has made abundantly clear that

[p]robable cause is the minimal requirement for a reasonable search permitted by the Constitution. It is an elusive concept, incapable of being precisely defined. It is more than mere naked suspicion but less than legal evidence necessary to convict. It is not a technical concept but rather one having to do with the factual and practical considerations of every day life upon which reasonable men, not constitutional lawyers, act. It has been described by this Court as a well grounded suspicion that a crime has been or is being committed.

[*State v. Waltz*, 61 *N.J.* 83, 87, 293 *A.2d* 167 (1972) (citations and internal quotation marks omitted).]

As noted, probable cause and particularity perforce are separate and distinct concepts within the warrant clause. In respect of

---

[4] Its federal counterpart is nearly, but not exactly, identical: "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *U.S. Const.* amend. IV. The sole substantive difference between the two is that the federal constitution facially applies to both arrest and search warrants, as it requires a particular description of "the *persons* or things to be seized[,]" while our state constitution speaks in terms of "the *papers* or things to be seized."

[5] In identical words, both the federal and state constitutions provide that "[t]he right of the people to be secure in their persons, houses, papers, and effects, *against unreasonable searches and seizures*, shall not be violated[.]" *U.S. Const.* amend. IV; *N.J. Const.* art. I, ¶ 7 (emphasis supplied).

particularity, it hardly need be said that "[t]he prime purpose of the [Fourth] Amendment is to assure that the people will be secure in their persons, houses, papers, and effects from intrusion and seizure by officers acting under the unbridled authority of a general warrant." *Daniels, supra,* 46 *N.J.* at 436, 217 *A.*2d 610 (citation and internal quotation marks omitted). For that reason, the particularity requirement in the warrant clause commands that "the place to be searched shall be particularly described." *Ibid.* Because "the fundamental requirement of the Fourth Amendment is reasonableness[,]" *State v. Romeo,* 43 *N.J.* 188, 206, 203 *A.*2d 23 (1964), "[t]he description of the premises [to be searched] requires no more than 'practical accuracy.'" *Daniels, supra,* 46 *N.J.* at 437, 217 *A.*2d 610 (quotations omitted). In the main, "[t]he test is not whether the description is completely accurate in every detail but rather whether it furnishes a sufficient basis for identification of the property so that it is recognizable from other adjoining and neighboring properties." *Ibid.* (citation omitted). Stated differently, "the description is sufficiently clear[ ] if it was such as to enable the officer readily to find the place to be searched, or if the location can be found with reasonable effort, or if it provides reasonable certainty of identification[.]" *Id.* at 436–37, 217 *A.*2d 610 (citations and internal quotation marks omitted).

It is against these clear and well-settled constitutional yardsticks that one must gauge the sufficiency of a warrant that describes the place to be searched as a location where a putative defendant, against which and whom probable cause has been arrayed, has "possession, custody, control, or access."

### B.

No doubt, the warrant issued by the Superior Court did not state specifically that the police were authorized to search the first floor apartment at 105 Wayne Avenue. The affidavit, however, recounted that police attempts to secure additional information concerning which apartment at 105 Wayne Avenue was tied

factually to Daniels's drug trafficking operation had been stymied: when the informant tried to purchase cocaine and heroin from Daniels, he drove the informant to 105 Wayne Avenue but ordered that the informant stay outside, and later research into the utilities servicing those premises did not disclose Daniels's name. Of course, in their investigative efforts, the police had to be circumspect at the risk of "blowing their cover," thereby jeopardizing both their investigation and the safety and well-being of those who, at personal risk, had assisted law enforcement covertly and surreptitiously.

In support of their application for a search warrant for 105 Wayne Avenue, the police provided to the neutral and detached magistrate all of the information they had. After describing in detail the building identified as 105 Wayne Avenue, they requested a warrant solely "for the apartment in 105 Wayne Avenue to which Allen Daniels [a/k/a] 'Marty', has possession, custody, control or access." The issuing judge, after finding sufficient probable cause to sustain the warrant, granted the police the authority to conduct a search. However, before doing so and in a self-evident abundance of caution, the warrant required that the police confirm, from Daniels himself, the precise apartment within 105 Wayne Avenue to which he had "possession, custody, control, or access[;]" the failure to do so nullified the warrant. The police, mindful of their obligations, did not execute the warrant on 105 Wayne Avenue until after Daniels disclosed his ties to the first floor apartment.

These circumstances are not unique. In *Ratushny, supra,* the Appellate Division held that

> where the premises reasonably believed to house illegal activity are known or reasonably should have been known by the police to be premises being utilized for the occupancy of more than one family, the search warrant must contain as specific a description of the particular area to be searched as the nature of the circumstances reasonably permit. In many cases this will require a designation of a particular apartment number or location. Where, however, such information is not known, and the police are justified in not inquiring for fear of alerting a suspect, a more general limitation will suffice. If this is the case, the circumstances should be disclosed in the affidavit.

[82 *N.J.Super.* at 506, 198 *A.*2d 131 (citations omitted).]

*Ratushny* explained that it "adopt[ed] this standard in such cases where a more specific identification of the particular premises involved is shown to be not practicable." *Id.* at 507, 198 *A.*2d 131. It noted that "[a]lthough such a general description falls short of the particularity most desired, it does indicate to those executing the warrant that they are not at liberty to search every apartment. The authorizing instrument is no longer a license to intrude at whim." *Ibid.* (citation omitted). It emphasized that "[o]nce armed with the warrant officers may be able to make inquiry where necessary just prior to entry and before a suspect can flee or destroy evidence." *Ibid.* *Ratushny* cautions, however, that "a general description such as that suggested above will pass muster only when it appears that a more specific description could not be obtained without endangering the secrecy of surveillance or the efficacy of an arrest, or there are equivalent justifying circumstances." *Ibid.* That said, *Ratushny* explicitly approved a procedure whereby "warrants which added to a detailed description of the entire building a phrase such as 'the premises occupied by [the defendant] and over which he has possession and control' " would be constitutionally valid. *Id.* at 506–07, 198 *A.*2d 131 (citations omitted).

In a similar vein, this Court has held that "[w]hile a search warrant must describe the premises to be searched with reasonable accuracy, pin-point precision is not demanded." *Wright, supra,* 61 *N.J.* at 149, 293 *A.*2d 380 (citation omitted). In an instance where the affidavit and warrant failed to specify which of three apartments on a specific floor was to be searched, *Wright* determined the search to be consonant with the constitutional prohibition against unreasonable searches and seizures because "the affidavit did state that the intended apartment was the one that was in fact occupied by the defendant. Under these or like conditions such designation is sufficient." *Ibid.* In so concluding, *Wright* pointedly observed that "[w]e take this to have been the holding in [*Ratushny, supra.*]" *Ibid.* *Wright* places the particularity requirement in its proper context: "The underlying reason

for the requirement that there be an adequate description of the premises in a search warrant is to prevent the police officer from entering property he has no authority to invade. *Obviously his own knowledge is a very relevant factor." Ibid.* (citations omitted; emphasis supplied).

A fair, balanced, and reasoned application of these standards should lead inescapably to the conclusion that the October 29, 2004 search of 105 Wayne Avenue was conducted well within constitutional limits. The police secured a search warrant that, following valid precedent, particularly described the building within which the apartment where illegal drugs were being stored was located, and then limited their authority to search solely to the apartment over which Daniels had "possession, custody, control or access." The issuing judge, in a laudable exercise of restraint and common sense, further limited the authority to conduct the permitted search, requiring confirmation from Daniels of the specific apartment within 105 Wayne Avenue to which he had a tie *before* the search could be effected. In those circumstances, to claim—as the Appellate Division and the majority do—that this search was constitutionally infirm requires that this Court declare both *Ratushny* and *Wright* to be bad law, something it obviously has not done. Because this case should be governed by the principles long developed in *Ratushny* and *Wright*—and not trivialized by asserting, via a judicial sleight-of-hand, that the governing principles in those cases are mere dicta—the trial court's denial of defendant's suppression motion rightly should be sustained.

## C.

*Ratushny* and *Wright* are not outliers in our jurisprudence and, hence, are undeserving of the back-handed treatment accorded them by the Appellate Division and the majority. The principle for which they stand is repeatedly reaffirmed in our case law, which holds that generalized descriptions of premises accompanied by some limited indicia of the place to be searched pass constitutional muster when further inquiry might alert wrongdoers. *See*

State v. Rodriguez, 198 N.J.Super. 569, 573, 487 A.2d 1287 (App. Div.1985) (citing *Ratushny* with approval); State v. Schumann, 156 N.J.Super. 563, 566–67, 384 A.2d 201 (App.Div.1978) (same); State v. Hendricks, 145 N.J.Super. 27, 32, 366 A.2d 999 (App.Div. 1976) (citing *Ratushny* and *Wright* with approval and explaining that "if the affidavit states that the intended place to be searched is the one actually occupied by the defendant, the description is sufficiently accurate to satisfy the Fourth Amendment"); State v. Medero, 95 N.J.Super. 209, 213–14, 230 A.2d 516 (App.Div.1967) (sustaining warrant where street number was incorrect because, in affidavit, "[t]he premises were quite thoroughly and specifically described").

This principle also has enjoyed enduring and continued vitality outside of New Jersey. *See, e.g., Alabama*: State v. Teague, 469 So.2d 1310, 1318 (Ala.Crim.App.1985) (noting that "the better practice in cases involving multiple occupancy is to describe the building or residence with the addition of a phrase such as the premises occupied by the defendant and over which he has possession and control" (quoting *Ratushny, supra*, 82 N.J.Super. at 506–07, 198 A.2d 131 (internal quotation marks omitted))); Sadie v. State, 488 So.2d 1368, 1372 (Ala.Crim.App.1986) (quoting *Teague, supra*); *California*: People v. Estrada, 234 Cal.App.2d 136, 148, 44 Cal.Rptr. 165 (Cal.App.1965) ("If the description in the warrant limits the search to a particular part of the premises either by a designation of the area or other physical characteristics of such part or by a designation of its occupants, the business conducted there, or otherwise so that the officer executing the warrant can with reasonable effort identify the place to be searched, the warrant will meet Fourth Amendment requirements in respect to the description of the place to be searched."); People v. MacAvoy, 162 Cal.App.3d 746, 754, 209 Cal.Rptr. 34 (Cal.App.1984) (same); People v. Duncan, 115 Cal.App.3d 418, 425, 171 Cal.Rptr. 406 (Cal.App.1981) ("The requirement that the warrant particularly describe the place to be searched is met if the description is sufficiently definite that the officer conducting the search can with reasonable effort ascertain and identify the place intended." (cita-

tion and internal quotation marks omitted)); *Connecticut*: *State v. Buddhu*, 264 *Conn.* 449, 825 *A.*2d 48, 59–60 (2003) (stating that "search warrant directed against a multiple-occupancy structure will be deemed valid if it describes the particular subunit to be searched with sufficient definiteness to preclude a search thereunder of other units located in the larger structure and occupied by innocent persons. A more particular description obviously lessens the likelihood of a general search of such a structure. The particularity requirement will be met by including the correct address of the building and by naming the individual whose apartment is to be searched" (citations, internal quotation marks and editing marks omitted)); *Massachusetts*: *Commonwealth v. Toledo*, 66 *Mass.App.Ct.* 688, 693, 849 *N.E.*2d 1281 (Mass.App.Ct. 2006) (stating that "particularity of the description must be sufficient to enable the executing officer to locate and identify the premises to be searched with reasonable effort so that there is no reasonable probability that another premises might be mistakenly searched which is not the one intended to be searched under the search warrant" (citations, internal quotation marks and editing marks omitted)); *Nebraska*: *State v. Groves*, 239 *Neb.* 660, 477 *N.W.*2d 789, 795 (1991) (explaining that "[t]he test to determine the sufficiency of a search warrant's description is whether the place to be searched is described with sufficient particularity so as to enable the executing officer to find and identify the location with reasonable effort, and whether there is any reasonable probability that another site might mistakenly be searched"); *New York*: *People v. Davis*, 146 *A.D.*2d 942, 537 *N.Y.S.*2d 93, 94 (1989) (stating that "description in a search warrant of the place to be searched satisfies the requirements of the 4th Amendment of the U.S. Constitution if it 'is such that the officer ... can with reasonable effort ascertain and identify the place intended'" (quoting *Steele v. United States*, 267 *U.S.* 498, 503, 45 *S.Ct.* 414, 416, 69 *L.Ed.* 757, 760 (1925))); *Pennsylvania*: *In Interest of Wilks*, 418 *Pa.Super.* 73, 613 *A.*2d 577, 579 (1992) (explaining that "search warrant directed against an apartment house, or other multiple-occupancy structure will be held invalid for lack of speci-

ficity if it fails to describe the particular room or subunit to be searched with sufficient definiteness to preclude a search of other units[,]" noting that "[w]here the description provided is precise enough to enable the officer to ascertain and identify, with reasonable effort, the place intended, and where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity[,]" and holding that "reviewing court must make a practical, commonsense decision whether the place to be searched has been specified with sufficient particularity" (citations omitted)); *Texas*: *Olivas v. State*, 631 *S.W.*2d 553, 556 (Tex.App.1982) ("If the warrant is sufficient to enable the executing officer to locate and identify the premises intended to be searched, and the deficiencies in the description do not give rise to a reasonable probability that mistaken execution will take place at an unintended site, then the warrant is valid."); *South Dakota*: *State v. Smith*, 344 *N.W.*2d 505, 508 (S.D.1984) (holding that "a search warrant must particularly describe the place to be searched, but that requirement is satisfied if the circumstances surrounding the execution of the warrant are such that the officer can, with reasonable effort, ascertain and identify the place intended to be searched" (citation omitted)).

Federal cases approach the question in like manner. For example, in *Maryland v. Garrison*, 480 *U.S.* 79, 107 *S.Ct.* 1013, 94 *L.Ed.*2d 72 (1987), the Supreme Court of the United States considered a search warrant that authorized a search of the third floor of a building; yet, it was not until the search had commenced and the police had seized illegal drugs that the police realized that the third floor contained two separate apartments.[6] Upholding

---

[6] Although *Garrison* arose from a prosecution in the state courts of Maryland, the opinion of its highest court, the Court of Appeals of Maryland, had noted that it was deciding *Garrison* in reliance on "Article 26 of the Maryland Declaration of Rights and Maryland cases as well as the Fourth Amendment to the Federal Constitution and federal cases." *Id.* at 83, 107 *S.Ct.* at 1016, 94 *L.Ed.*2d at 80 (footnote omitted). Describing that opinion, the Supreme Court of the United States noted that "[r]ather than containing any 'plain statement' that the decision rests upon adequate and independent state grounds, the opinion indicates

the search, the Court explained that "[t]he Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'" *Id.* at 84, 107 *S.Ct.* at 1016, 94 *L.Ed.*2d at 80. It explained that "[t]he manifest purpose of this particularity requirement was to prevent general searches" and that "[b]y limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Ibid.* (footnote omitted). Similar to the warrant issued below, *Garrison* noted that "[i]n this case there is no claim that the 'persons or things to be seized' were inadequately described or that there was no probable cause to believe that those things might be found in 'the place to be searched' as it was described in the warrant." *Id.* at 85, 107 *S.Ct.* at 1017, 94 *L.Ed.*2d at 81. Properly circumscribing its role, the Court emphasized that it "must judge the constitutionality of [the police] conduct in light of the information available to [the police] at the time they acted." *Ibid.* Underscoring that "the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant[,]" the Court reasoned that "[t]he validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate." *Ibid.* (footnote omitted). It therefore concluded that "the warrant, insofar as it authorized a search that turned out to be ambiguous in scope, was valid when it issued." *Id.* at 85–86, 107 *S.Ct.* at 1017, 94 *L.Ed.*2d at 82. *See also United States v. Prout,* 526 *F.*2d 380, 387 (5th Cir.1976) ("The test for whether a sufficient description of the premises to be searched is given in a search warrant [is that i]t is enough if the description is

---

that the Maryland constitutional provision is construed *in pari materia* with the Fourth Amendment. We therefore have jurisdiction." *Id.* at 83–84, 107 *S.Ct.* at 1016, 94 *L.Ed.*2d at 80 (footnote omitted).

such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended.... An error in description is not automatically fatal to the validity of a search warrant." (citations omitted)); *United States v. Hinton,* 219 *F.*2d 324, 326 (7th Cir.1955) (stating that "[t]he basic requirement is that the officers who are commanded to search be able from the particular description of the search warrant to identify the specific place for which there is probable cause to believe that a crime is being committed. This requirement may be satisfied by giving the address of the building and naming the person whose apartment is to be searched" (citation and internal quotation marks omitted)); *United States v. Esters,* 336 *F.Supp.* 214, 217–18 (E.D.Mich.1972) (citing *Hinton, supra,* with approval).

The overarching lesson of the weight of both our own and other authority is straightforward: when confronted with a multi-family dwelling, the particularity requirement of the warrant clause is satisfied if the warrant "contain[s] as specific a description of the particular area to be searched *as the nature of the circumstances reasonably permit." Ratushny, supra,* 82 *N.J.Super.* at 506, 198 *A.*2d 131 (emphasis supplied). In order to meet that requirement reasonably and rationally in instances when the actual apartment harboring illegal conduct cannot be ascertained without jeopardizing the investigation or its participants, the particularity requirement of the warrant clause is sufficiently elastic so as to be satisfied by "a detailed description of the entire building[modified by] a phrase such as the premises occupied by the defendant and over which he has possession and control." *Id.* at 506–07, 198 *A.*2d 131 (citations, internal quotation marks and editing marks omitted). Neither our state constitution nor our federal constitution demands or requires more; neither should this Court so dictate by judicial fiat.

## IV.

For the foregoing reasons, I dissent.

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE and HOENS—6.

*For reversal*—Justice RIVERA–SOTO—1.